### Nat M. Washer v. J. F. Smyer et al.

#### No. 2931.   Decided April 17, 1919.

**1.—Corporation—Stock—Property Received—Note of Subscriber.**

A note given to a corporation by a subscriber in payment for stock issued to him does not constitute "property actually received" within the meaning of the Constitution (art. 12, sec. 6), which forbids stock to be issued except for money paid or such property. The capital stock of a corporation should represent something other than obligations of its subscribers to pay for their stock. (Pp. 403, 404.)

**2.—Same—Secured Note—Query.**

Whether the note of a stockholder, amply secured by mortgage and constituting a form of property in which by express statutory authority the corporation could invest its capital, could be taken by it as property received for its stock is questioned, but not decided.   (P. 404.)

**3.—Same—Innocent Holder.**

A negotiable note secured by mortgage, given to a corporation by a subscriber in payment for stock issued to him, though treated as illegally issued and not for "property received" within the meaning of the Constitution, would still be enforcible against the maker in the hands of an innocent purchaser. (Pp. 404, 405.)

**4.—Same.**

The Constitution (art. 12, sec. 6) pronounces all fictitious increase of stock void; but though making illegal the issuance of stock for other consideration than money, labor, or property received, does not pronounce void the note so illegally given by a subscriber for his stock. Making the transaction unlawful is not the same as declaring all securities issuing out of it void. (Pp. 404, 405.)

**5.—Cases Discussed.**

Thompson v. Samuels, 14 S. W., 143; Gilder v. Hearne, 79 Texas, 120; State Bank of Chicago v. Holland, 103 Texas, 266; Fidelity & Deps. Co. v. Wiseman, 103 Texas, 286; Mathis v. Pridham, 1 Texas Civ. App., 58; Lockney State Bank v. Martin, 191 S. W., 796; discussed and approved. San Antonio Irrig. Co. v. Deutschmann, 102 Texas, 201; Gilder v. Hearne, 79 Texas, 120; distinguished. Ater v. Rotan Groc. Co., 189 S. W., 1106, disapproved. (Pp. 406-412.)

**6.—Same.**

A negotiable note founded on an illegal transaction is unenforcible by an innocent purchaser for value before maturity only when such security is expressly declared void by the Constitution or statutes.   (P. 405.)

**7.—Illegal Contract—Parties Equally at Fault.**

The corporation and a stockholder who has paid for his stock by his promissory note are equally at fault in the illegal transaction. In such case the condition of the defendant is preferable. The latter can not recover back from the corporation interest paid to it by him on the note. (P. 412.)

Error to the Court of Civil Appeals for the Seventh District, in an appeal from Swisher County.

Smyer sued the Prudential Life Insurance Company of Texas and Washer to cancel a note given in payment for stock in the company and the stock issued therefor and to recover back interest payments. Washer, by cross action, sought recovery on the note and foreclosure of lien securing it. Smyer had judgment for his interest payments and cancellation of stock, and Washer recovered on the note against Smyer and the company as indorser, with foreclosure of lien. The Prudential Life Insurance Company appealed, and the judgment was reversed and rendered, allowing Smyer cancellation both of the note and of the stock, and Washer recovery on the note only against the insurance company as indorser. Both Washer and the insurance company obtained writs of error.

*James A. King,* for Prudential Life Insurance Company, plaintiff in error.—If said stock was not paid for by the note and deed of trust, executed by plaintiff, it was subsequently paid for by the sale of the same to Washer, and property received therefor at the fair and reasonable value of said note and deed of trust, which was a full compliance with the law and gave full force, vitality and validity to said note and mortgage and stock; and if said stock was not paid for by said note and mortgage, there was a continuing obligation upon the part of said plaintiff to pay for same and said stock was, at no time, void. Constitution of Texas (1876), art. 12; Houston Fire & Marine Ins. Co. v. Swain, 114 S. W., 149; Wiseman v. Swain, 114 S. W., 145; Fidelity and Deposit Co. of Md. v. Wiseman, 124 S. W., 621; Fidelity & Deposit Co. of Md. v. Wiseman, 126 S. W., 1109; S. A. St. Ry. Co. v. Adams, 26 S. W., 1040; Mathes v. Pridham, 20 S. W., 1015; Nenney v. Waddill, 25 S. W., 308; Northside Ry. Co. v. Worthington, 30 S. W., 1055; Home Ins. Co. v. Sherwood, 72 Mo., 461; Sanger v. Upton, 91 U. S., 64; Upton v. Tribilcock, 91 U. S., 47; Railway Co. v. McCarthy, 6 Otto, 267; Purdy's Beach on Private Corporations, sec. 271; De Shelter v. American Springs Water Supply Co., 182 Ill. App., 403; Shaw v. Straight, 119 N. W., 953; Marshall National Bank v. O'Neal, 34 S. W., 346; Cherry v. First Texas Chemical Mfg. Co., 103 Texas, 82, and all other authorities noted under next proposition.

The fair and reasonable value of said note and mortgage was obtained by the insurance company in the sale thereof to Washer and said sale satisfied a legitimate corporate purpose and obtained money or its equivalent for it. Houston & T. C. Ry. Co. v. Bremond, 18 S. W., 448; McCarthy v. Texas Loan & Guar. Co., 142 S. W., 96; General Bonding

& Casualty Ins. Co. v. Mosely, 174 S. W., 1031; Williams v. Brewster, 117 Wis., 370, 93 N. W., 479; Western Supply Mfg. Co. v. U. S. & Mex. Trust Co., 92 S. W., 986; Williams v. Western U. Tel. Co., 93 N. Y., 189; Scott v. Abbott, 160 Fed., 573; Memphis & L. R. R. Co. v. Dow, 7 Sup. Ct. Rep., 482; Ill. Trust & Savings Bank v. Pac. Ry. Co., 49 Pac., 197; Nelson v. Hubbard, 11 So., 428; 1 Cook on Corporations (4th ed.), sec. 47; Clark v. American Coal Co. (Iowa), 53 N. W., 291.

To render void a note and deed of trust given in payment of capital stock of an insurance corporation, the acceptance of the same must not only be prohibited by either organic or statutory enactment, but said inhibition must go further and provide that all contracts made in violation thereof are void. Thompson v. Samuels, 14 S. W., 143; Campbell v. Jones, 21 S. W., 723; First National Bank v. Ledbetter, 34 S. W., 1043; Gilder v. Hearne, 14 S. W., 1031; Simkins on Contracts and Sales, pp. 408-409-410; Horn Bros. v. Baker, 173 S. W., 474; Davis v. Burns, 173 S. W., 476; Lauter v. Trust Co., 85 Fed., 894; Hamilton v. Fowler, 89 Fed., 22.

The note and deed of trust constituted "property" within the meaning of the constitutional and statutory provisions prohibiting a corporation from issuing stock except for money paid, labor done or property actually received. Cole v. Adams, 92 Texas, 171; O'Bear-Nester Glass Co. v. Antiexplo. Co., 101 Texas, 432; Aggs v. Shackelford County, 85 Texas, 145; Ft. Worth Imp. Dist. No. 1 v. City of Ft. Worth, 158 S. W., 164; 6 Words and Phrases, 5694; 32 Cyc., 647.

Subsequent creditors presumed to trust corporation on faith of capital stock and subscriptions thereto. Hospes v. Northwestern Mfg. and Car Co., 15 L. R. A., 474; Handley v. Stutz, 139 U. S., 417, 35 L. Ed., 237; Upton v. Engelhart, 3 Dill. (U. S. C. C.), 504; First National Bank v. Mining Co., 18 Am. St., 514, 42 Minn., 327; 2 Clark and Marshall on Corporations, pp. 1454-1455; Thompson's Liability of Stockholders, sec. 408; Mathis v. Pridham, 20 S. W., 1018; Peck v. Elliott, 79 Fed., 13; Reed v. Eatonton Mfg. Co., 40 Ga., 98, 2 Am., 563; Lantry v. Wallace, 97 Fed., 867, 869; Wallace v. Hood, 89 Fed., 15; Tillinghast v. Bailey, 86 Fed., 48; Olson v. State Bank, 67 Minn., 274; Palmer v. Bank of Zumbrota, 72 Minn., 267; 10 Cyc., 536.

The constitutional and statutory provisions in question will not be construed to forbid the acceptance by the corporation of securities in which it must immediately reinvest its funds. Southern Life Ins. & Trust Co. v. Lanier, 5 Fla., 110; Clark v. Farrington, 11 Wis., 321; Blunt v. Walker, 11 Wis., 349; Cornell v. Hichens, 11 Wis., 368; Lyon v. Ewings, 17 Wis., 613; Andrews v. Hart, 17 Wis., 306; Western Bank v. Tallman, 17 Wis., 547; State ex rel. Norvell-Shapleigh Hardware Co. v. Cook (Mo.), 77 S. W., 559; Phillips v. Covington & Cin. Bridge Co., 59 Ky., 219; State of South Dakota v. State of North Carolina, 192 U. S., 286; Union Central Life Ins. Co. v. Curtis, 35 Ohio St., 343; City of Griffin v. Inman, 57 Ga., 370; Town of Clifton Forge v. Brush Electrical Co., 23 S. E., 288; Evansville, I. & C. R. R. Co. v. City of

Evansville, 15 Ind., 395; Kinkade v. Witherop, 69 Pac., 399; Orcutt v. McGinley, 148 N. W., 586; Commonwealth v. Town of Williamston, 30 N. E., 472; Shoemaker v. Gorhen Township, 14 Ohio St., 569; Cole v. Adams, 92 Texas, 171; Cook on Corporations (4th ed.), sec. 47.

The plaintiff was not entitled to the cancellation of the stock certificates nor the note and deed of trust given in payment for said stock, for that, if the delivery and acceptance of the same was a violation of law, the plaintiff was a party to such violation and therefore was not entitled to an affirmative equitable relief, and in any possible statement of his cause of action the fact that the note and deed of trust were delivered in exchange for stock must be disclosed. Beer v. Landman, 88 Texas, 450; Wiggins v. Bisso, 92 Texas, 219; Read v. Smith, 60 Texas, 379; Grant v. Ryan, 37 Texas, 37; Olcott v. International & G. N. R. R. Co., 28 S. W., 728; Huff v. McMichael, 127 S. W., 574; Davis v. Sittig, 65 Texas, 501; 1 Cook on Corporations (4th ed.), sec. 39, p. 97, and authorities there cited.

*Ball & Seeligson* and *C. W. Truehart,* for plaintiff in error Washer.— Unless a statute or constitutional provision, either expressly or by necessary implication, declares an Act void, such statute or constitutional provision will not affect the rights of an innocent purchaser. Thompson v. Samuels, 14 S. W., 143; Bank v. Holland, 103 Texas, 266, 270; Campbell v. Jones, 21 S. W., 723; Scheffel v. Smith, 169 S. W., 1131; Roach v. Davis, 54 S. W., 1070; Flynn v. Bank, 118 S. W., 848, 851; Lauter v. Jarvis, etc., Co., 85 Fed. (C. C. A.), 894; Union Trust Co. v. Preston Natl. Bank, 99 N. W., 399, 402; Bank v. Chapman, etc., Co., 123 S. W., 641, 643; Vallett v. Baker, 6 Wend. (N. Y.), 613, 622; Daniels on Negotiable Instruments, sec. 197.

A negotiable note given to a corporation for stock therein is valid and enforceable in the hands of a bona fide purchaser, before maturity, and for value. Scheffel v. Smith, 169 S. W., 1131, 1132; Marshall Bank v. O'Neal, 34 S. W., 344, 347; McCarthy v. Texas, etc., Co., 142 S. W., 96, 99; Houston, etc., Co. v. Swain, 114 S. W., 149, 154; Mathis v. Pridham, 20 S. W., 1015, 1021; Blair v. Rutherford, 31 Texas, 465, 470; Willmarth v. Crawford, 10 Wend. (N. Y.), 341, 343; Shaw v. Straight, 20 L. N. S. (Minn.), 1077, 1083; Cornell v. Hichens, 11 Wis., 368, 387; Cox v. North Hampton Brewing Co., 91 Atl., 859, 860; 1 Daniel on Negotiable Instruments, sec. 386; Thompson on Corporations, sec. 1660.

A note given for stock in a life insurance corporation is valid even in the hands of the insurance company, provided such note is secured by a first mortgage upon unencumbered real estate in this State, the title to which is valid, and the market value of which, exclusive of improvements, is at least double the amount loaned thereon. Constitution, art. 12, sec. 6; Rev. Stats., 4711 (Acts 1889); Rev. Stats., 4707 (Acts 1875); Rev. Stats., 4728, 4734 (Acts 1909).

*Y. W. Holmes,* for defendant in error Smyer.—Where a corporation issues to a party certificates of its stock, for his note and mortgage in payment therefor, the whole transaction, including the certificates of stock and note and mortgage, is void. Constitution of Texas, art. 12, sec. 6; Vernon's Sayles' Statutes, arts. 1146, 1147, 1148; Gen. Bonding & Casualty Ins. Co. v. Mosely, 174 S. W., 1031; McCarthy v. T. L. & G. Co., 142 S. W., 96; Columbia Carriage Co. v. Hatch, 47 S. W., 288.

A note which is void because given for stock in a corporation can not be made valid by a sale of same to a third party. A note given to a corporation for stock therein is void even in the hands of an innocent purchaser. Constitution of Texas, art. 12, sec. 6; Vernon's Sayles' Civil Statutes, arts. 1146, 1147, 1148, 1149; Reid v. Smith, 60 Texas, 379; Bank v. Holland, 126 S. W., 564; Thompson v. Samuels, 14 S. W., 143; Campbell v. Jones, 21 S. W., 723; Snoddy v. American National Bank, 13 S. W., 127.

Even if appellee Smyer was not entitled to a cancellation of the note and deed of trust because it had gotten into the hands of Washer as an innocent purchaser, he was entitled to judgment against the company for such sum as he might have to pay to such innocent purchaser and also for the $480 paid as interest on the note, the contract between appellee Smyer and appellant being executory. Whaley v. McCall, 115 S. W., 658; Lewey v. Crawford, 23 S. W., 1041; Altgelt v. Gerbic, 149 S. W., 233; Shotwell v. McCardell, 47 S. W., 39; Hamblen v. Folts, 7 S. W., 834; 12 A. & E. Ency., 1; General B. & C. Co. v. Moseley, 174 S. W., 1031; Beer v. Landman, 31 S. W., 805.

Neither the Constitution nor the statutes permit an insurance company to accept a note to it from a subscriber to its capital stock, even though such corporation be authorized to make loans on real estate, and such note is secured by mortgage on real estate, and it being such security as the law would allow the company to make a loan on. Texas Constitution, art. 12, sec. 6; Vernon's Sayles' Statutes, art. 4711; General Bonding & C. Co. v. Moseley, 174 S. W., 1031; McCarthy v. T. L. & G. Co., 142 S. W., 96.

The fact that a note given a company for stock therein is secured by a deed of trust does not raise it to the dignity of being property. Columbia Carriage Co. v. Hatch, 47 S. W., 288; Davis v. Burns, 173 S. W., 476.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The case presents the question of whether a note given a corporation and accepted by it in payment for shares of its capital stock is enforcible in the hands of a bona fide holder for value, who acquired it before maturity in due course of business and without notice of the nature of the transaction in which it was given.

The note involved here was given by J. F. Smyer to the Prudential Life Insurance Company of Texas in payment for shares of its capital stock for which a stock certificate was issued to him by the company.

It was secured by a valid first mortgage lien upon land admittedly worth double its amount. With the lien, it was transferred before maturing by the insurance company to Nat M. Washer in due course of business in part payment for a building conveyed by Washer to the company. Washer is an innocent holder. The suit was by Smyer against the insurance company and Washer to cancel the note, the lien, and the stock, and to recover from the insurance company an amount paid by him as interest on the note, upon the ground that the entire transaction between himself and the insurance company wherein the note was given and accepted in payment for the stock, was void under the Constitution. By cross-action, Washer sought recovery on the note and for the foreclosure of his lien. The trial court granted Smyer's prayer for the recovery of the interest payment against the insurance company, and for the cancellation of the stock certificate, but rendered judgment against him, and the insurance company as endorser, in Washer's favor upon the note and for foreclosure of the lien, with a judgment over in Smyer's favor against the insurance company for any amount he might have to pay under Washer's judgment, including the amount realized at the foreclosure sale. The Court of Civil Appeals held that the stock transaction was void, as Smyer contended. It rendered judgment for Smyer both against the insurance company and Washer for cancellation of the note and lien, and against the insurance company for the interest payment. It denied all recovery by Washer except against the insurance company on its endorsement of the note. Its judgment did not cancel the shares of stock issued to Smyer, but left them untouched. We granted a writ of error both to Washer and the insurance company. .

The Constitution declares:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void." Art. 12, sec. 6.

The effect of this provision upon the stock transaction between Smyer and the insurance company is decisive of the case.

It is clear, in our opinion, that the note of a stock subscriber accepted by a corporation in payment for the stock issued him is not to be regarded as "property actually received" within the meaning of the constitutional provision. In such a transaction the subscriber does not pay anything into the treasury of the corporation. He merely gives the corporation his promise to pay. His indebtedness to the corporation arising from the stock subscription is merely evidenced in a different form. True, it is placed in a negotiable form, but in no actual sense is the liability to the corporation extinguished. It is only differently expressed. The transaction is in fact but in the nature of a novation. The corporation has received, at last, only another debt of the subscriber. It has been paid nothing. The real result is that the subscriber has secured an extension of the time of payment, and the corporation has received but a postponement of its right to demand payment. The

capital stock of a corporation should represent something other than the mere obligations of its subscribers to pay for their stock.

Undeniably, in the broad sense a note is property in the hands of the payee. So, in a literal sense, is everything property which is capable of ownership. All forms of choses in action are property in the same sense,—the right to recover a debt, the right to recover damages for breach of a contract, unsatisfied judgments, and other similar kinds of actionable demands. But the framers of the Constitution never intended that property of that nature should constitute the capital of a corporation. The term "property" was used in this section of the Constitution in no such sense. It means property readily capable of being applied to the debts of the corporation. As a rule, it should be property of the kind adapted to the charter uses of the corporation and which it may legally acquire. There are some classes of property which are so staple in character and so easily convertible into money as to be in actual commerce the ready equivalent of money, and it is possible that a corporation in its formative period would be authorized to receive such property in payment for stock though not, in a strict sense, adapted to its purposes. The different forms of valuable property and the different purposes for which corporations may be created, make it impossible to lay down other than general rules upon the subject.

The integrity of a corporation and the interests of the public demand, however, that the assets of a corporation consist of something more than its stockholders' debts. Its capital can not be thus constituted, and, therefore, it can not accept a stock subscriber's note in payment for his stock. There is authority opposed to this holding, as there is authority which supports it. But it seems to us no authority is needed to establish it.

Whether the same rule should apply to a subscriber's note secured by a first mortgage lien upon land worth double the amount of the note, given in payment for stock in a life insurance company, such securities being a form of property in which by express statutory authority such a corporation may invest its capital stock, is a question which it is not necessary that we here decide.

For the purposes of this case the note and lien given by Smyer to the insurance company may be treated as not constituting property which may be accepted by such a corporation in payment for its stock, yet under the Constitution they are clearly enforcible in a bona fide holder's hands. This proposition is demonstrable from the language of the constitutional provision and the established rule of decision as to the effect of like prohibitions upon negotiable instruments in the hands of innocent holders.

There is no declaration in the constitutional provision that a transaction in which something other than money, property, or labor is received in payment for the corporation's stock shall be utterly void. It prohibits such a transaction and, therefore, makes it unlawful, but that is the extent to which it goes. If a security be accepted in payment

for the stock, such, for instance, as a subscriber's note, which is not property for such a purpose, the Constitution does not say either that it, or the stock issued for it, shall be void. The acceptance of the note in payment for the stock and the issuance of the stock are only interdicted. The word "void" is used but once in the constitutional provision, and that, it is to be noted, is not in the clause which prohibits the issuance of stock for other than money, property or labor. It is in the distinct clause which says that all fictitious *increase* of stock or indebtedness shall be void. While the term is found in that clause of the section, the framers of the Constitution avoided its use in the other. It must be assumed that they did so deliberately.

There is an essential difference between prohibiting a certain form of transaction—making it unlawful, and declaring that it, with all securities issuing out of it shall be utterly void. It is a distinction familiar in the law.

In order to hold a negotiable note unenforcible in the hands of a bona fide holder, it is not enough that it be founded upon an illegal consideration. It is not sufficient that it issue from a transaction prohibited by law, or one even denounced as criminal. To avoid it in the bona fide holder's hands there must be a constitutional or statutory provision which *expressly,* or by unavoidable implication, declares it or the transaction of which it is a part, to be *void.* Such is the rule announced by Chitty, Story and Daniel. It is the rule followed by this court, and generally by courts elsewhere.

Chitty says, page 95:

"In those cases in which the Legislature has declared that the illegality of the contract or consideration shall make the security, whether bill or note, void, the defendant may insist on such illegality, though the plaintiff, or some other party between him and defendant, took the bill bona fide, and gave a valuable consideration for it. And the innocent holder can, in such case, only resort to the party from whom he received the bill, etc., whom he may sue as indorser on the bill, or for the debt or consideration.

"But unless it has been so expressly declared by the Legislature, illegality of consideration will be no defense in an action at the suit of a bona fide holder for value, without notice of the illegality unless he obtained the bill after it became due. Thus in an action by the indorsee against the maker of a promissory note, the defense insisted on was, that the note had been given for hits against the defendant in a lottery insurance: Lord Kenyon, C. J., thought the plaintiff was entitled to recover, observing that the innocent indorsee of a gaming note, or note given on an usurious contract, could not recover, but that in no other case could the innocent indorsee be deprived of his remedy on the note; and that a contrary determination would shake paper credit to the foundation."

Story declares, section 192:

"The same doctrine (that the note is not avoided) will generally apply to all cases of a bona fide holder for value, without notice before it becomes due, where the original note, or the indorsement thereof, is founded on an illegal consideration; and this, upon the same general ground of public policy, without any distinction between a case of illegality, founded in moral crime or turpitude, which is malum in se, and a case founded in the positive prohibition of a statute, which is malum prohibitum; for, in each case the innocent holder is, or may be, otherwise exposed to the most ruinous consequences, and the circulation of negotiable instruments would be materially obstructed, if not totally stopped. The only exception is, where the statute, creating the prohibition, has, at the same time, either expressly, or by necessary implication, made the instrument absolutely void in the hands of every holder, whether he has such notice or not. There are but a few cases in which any statute has created a positive nullity of such instruments, either in England or America. The most important seem to be the statutes against gaming, and the statutes against usury."

The rule as stated by Story is reaffirmed by Daniel, section 197:

"The bona fide holder for value who has received the paper in the usual course of business is unaffected by the fact that it originated in an illegal consideration, without any distinction between cases of illegality founded in moral crime or turpitude, which are termed mala in se, and those founded in positive statutory prohibition which are termed mala prohibita. The law extends this peculiar protection to negotiable instruments, because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect. There is, however, one exception to this rule: that when a statute, expressly or by necessary implication, declares the instrument absolutely void, it gathers no vitality by its circulation in respect to the parties executing it; though even upon such instruments an indorser may, as we shall hereafter see, be held liable to a bona fide holder without notice.

"There are a very few cases in which the statute renders such instruments absolutely void; and the most important are the statutes against usury and gaming.

"In England, the policy of declaring the instrument a nullity in the hands of a bona fide holder no longer prevails, the statute of 8 and 9 Victoria, c. 109, having relaxed the ancient rule on the subject; and in some of the States similar statutes have been enacted."

Thompson v. Samuels, 14 S. W., 143, decided by the Commission of Appeals, with the opinion adopted by this court, reiterates the same rule as applied to a note given in a gambling transaction. Our statutes on gaming denounce gambling transactions in emphatic terms. By the criminal law they are as positively declared to be against public policy as is the issuance of stock by a corporation except for money, property

or labor by this constitutional provision. They are penalized by criminal punishment. In this constitutional provision no penalty is declared for its violation. It merely *prohibits* the issuance of the stock except for money, property or labor done. But, as pointed out in Thompson v. Samuels, the gaming statutes do not declare contracts entered into in such transactions to be void. Hence, it was there held that a note given for a gambling debt was enforcible in the hands of a bona fide holder, though as between the original parties it was of course unenforcible.

This decision and Gilder v. Hearne, 79 Texas, 120, 14 S. W., 103, present the distinction between a statute which merely prohibits a certain transaction or makes it unlawful, and one which declares the transaction to be void; and the effect of such statutes upon a note arising out of the two different classes of transaction when in the hands of a bona fide holder. While in Thompson v. Samuels the note was held to be enforcible in the hands of the bona fide holder, though given in a transaction denounced and penalized by the criminal law, for the reason that the law does not declare such a transaction to be void, in Gilder v. Hearne a usurious note was held to be unenforcible by a bona fide holder as to the interest, for the reason that the law does declare such a note, as to the interest, to be void.

Thompson v. Samuels was expressly approved in State Bank of Chicago v. Holland, 103 Texas, 266, 126 S. W., 564, attention being directed to its review of some of the earlier decisions of the court wherein the term "void" was broadly used in respect to gambling transactions, but not, it is stated, as meaning that a note given in such a transaction was unenforcible by a bona fide holder.

The English decision of Hay v. Ayling, 16 Ad. & Ellis, 423, by Lord Campbell, illustrates the rule. Gaming securities were declared void by an Act of Parliament in the time of Queen Anne. Under that Act recovery upon them was denied bona fide holders. Later, the Act of 5th and 6th William modified the Act of Anne, and declared that they should be illegal. The court held that under the later Act they were enforcible by a bona fide holder.

In Converse v. Foster, 32 Vt., 828, cited in 3 Kent, 80, it was said:

"All the cases that have been cited, and all that can be, so far as we know, both English and American, upon this subject turn upon this very distinction and difference between these statutes. In those cases in which the Legislature has declared that the illegality of the contract or consideration shall make the security, whether bill or note, void, the defendant may insist on such illegality, though the plaintiff or some other party between him and the defendant, took the bill or note bona fide, and gave a valuable consideration for it. But unless it has been so expressly declared by the Legislature, illegality of consideration will be no defense in an action at the suit of a bona fide holder for value without notice of the illegality, unless he obtained the note or bill after it became due."

In Sondheim v. Gilbert, 117 Ind., 71, 5 L. R. A., 432, 10 Am. St. Rep., 23, 18 N. E., 687, it was declared:

"The authorities justify the statement that a defendant may insist upon the illegality of the contract or consideration, notwithstanding the note is in the hands of an innocent holder for value, in all those cases in which he can point to an express declaration of the Legislature that the illegality insisted upon shall make the security, whether contract, bill or note, void. *But, unless the Legislature has so declared, then, no matter how illegal or immoral the consideration may be, a commercial note in the hands of an innocent holder for value will be held valid and enforcible.*"

In Cornell v. Hichens, 11 Wis., 368, which involved the giving of a note and mortgage in payment for stock in a corporation, it was said:

"There is another principle by which these plaintiffs would be protected, even though the company had not the power to receive notes and mortgages upon sale of its stock. It is a well known settled rule of law that if there be any purpose for which a corporation may receive a negotiable instrument, the bona fide indorsee of one which is given for an unauthorized purpose, shall not thereby suffer. He may rightfully presume that it was received by the corporation in the lawful exercise of its powers; and unless notice of the illegality be brought home to him, he will be protected. In the absence of a statutory declaration to that effect, the contract is not absolutely void; and all persons being alike chargeable with a knowledge of the law, but not of the facts, a party thus disobeying its commands by unlawfully dealing with a corporation will not be permitted to take advantage of his own wrong to the injury of an innocent person."

An illustration of the principle which emphasizes it strongly is found in those instances where the note was given in consideration of the suppression of a criminal prosecution. In all such cases, though the note is inoperative as between the parties, it is enforcible by a bona fide holder, although the compounding a felony is itself a crime. Of this application of the rule the Supreme Court of Indiana said in New v. Walker, 108 Ind., 365, 58 Am. Rep., 40, 9 N. E., 386.

"Our opinion is, that a statute making it a crime to take promissory notes in a prohibited transaction does not make the notes void in the hands of innocent purchasers, although the person who violates the statute commits a crime. This conclusion is well sustained by authority."

Reference to like decisions of other courts of eminent authority might be multiplied. They are cited without further discussion of their holding, as follows:   Cook v. Weirman, 51 Iowa, 561, 2 N. W., 386; Clark v. Ricker, 14 N. H., 44; State Capital Bank v. Thompson, 42 N. H., 369; Williams v. Cheney, 3 Gray (Mass.), 215; Cazet v. Field, 9 Gray (Mass.), 329, (by Chief Justice Shaw); Vallett v. Parker, 6 Wend. (N. Y.), 615; Willmarth v. Crawford, 10 Wend. (N. Y.), 341; Fleckner v. Bank, 8 Wheaton, 355, 5 L. Ed., 631; Oates v. National

Bank, 100 U. S., 239, 25 L. Ed., 580; Smith v. Columbus State Bank, 9 Neb., 31, 1 N. W., 893; Bohon's Assignee v. Brown, 101 Ky., 355, 41 S. W., 273; Town of Eagle v. Kohn, 84 Ill., 292; Lynchburg National Bank v. Scott, 91 Va., 652, 29 L. R. A., 827, 50 Am. St. Rep., 860, 22 S. E., 487; Glenn v. Farmers Bank, 70 N. C., 191; Ward v. Sugg, 113 N. C., 489, 24 L. R. A., 280, 18 S. E., 717; Schmueckle v. Waters, 125 Ind., 265, 25 N. E., 28; Meadow v. Bird, 22 Ga., 246; Hart v. Foundry Company, 72 Miss., 809, 17 So., 769; Vinton v. Peck, 14 Mich., 287; Union Trust Company v. Bank, 136 Mich., 460, 112 Am. St. Rep., 370, 99 N. W., 399.

An agreement between the corporation and the stock subscriber that it will accept his promissory note in payment for the stock is of no force as between the parties because prohibited by the constitutional provision. Such an agreement is incapable of enforcement by either party against the other. The giving of the note, therefore, will not discharge the stockholder from his liability for the stock imposed by his stock subscription. In such case the corporation has not received payment for the stock. The stockholder still owes the corporation for it. But if such a transaction is wholly void, what is to become of the rights of creditors against such a stockholder if the corporation becomes insolvent, as would likely prove the experience of any corporation whose capital was thus constituted? The stockholder may have permitted himself to be so held out to the public. He may have drawn dividends on his stock over a period of years. Creditors may have dealt with the corporation under the belief that he had paid into its capital what his relationship as a stockholder affirmed. Yet, if it be held that such a transaction through which the stockholder has acquired the stock, but never paid for it, is utterly void and, in consequence, the stock issued under it void, as well, that would be, at law, a good defense to the action of creditors to compel the stockholder to satisfy his obligation to the corporation. Only the equitable doctrine of estoppel could prevent its being a complete defense.

In such a case is the stockholder who has paid nothing for his stock, who has deceived the public, and worked an injustice to other stockholders, to be permitted to take shelter under the Constitution? Is he to be allowed to interpose it to defeat his just obligation? We decline to so hold. It could not have been intended by the framers of the constitutional provision that it should make possible the perpetration of such a fraud by permitting such a defense to be founded upon it. The law should answer in such a case that the stockholder's concern for the sanctity of the Constitution is a trifle belated. The true doctrine is that such an agreement is of no effect as between the parties because contrary to law, but neither a note given nor stock issued under it is utterly void. The agreement will not be suffered to accomplish a payment for the stock. No more will it be allowed to defeat the note or the stock in the hands of innocent holders. Shaw v. Straight, 107 Minn., 152, 20 L. R. A. (N. S.), 1077, 119 N. W., 951.

This court has affirmed that issued stock for which the corporation has received no equivalent whatever in money, property or labor, is not utterly void in the hands of an innocent holder. Such were the facts in Fidelity & Deposit Company v. Wiseman, 103 Texas, 286, 124 S. W., 621, 126 S. W., 1109. There, stock was issued by a corporation to W. J. Swain for bonds of a city which were forgeries and therefore worthless. Swain, it was held, was responsible to make good the default, and the stock was recognized as good in the hands of the innocent holder to whom it had been transferred. See, also, Houston Fire & Marine Insurance Company v. Swain, 114 S. W., 149.

In Mathis v. Pridham, 20 S. W., 1015, 1 Texas Civ. App., 58, by the Court of Civil Appeals for the First District in an opinion by Judge Williams, it was held that stock issued on the payment of less than its par value is not void under the constitutional provision. In such a case the stock is not fully paid for, but it is not void. In the opinion, it was emphasized that the only thing the constitutional provision renders wholly *void* is *the fictitious increase* of stock. Such is the plain language of the provision, and no additional implications can be drawn from it.

If stock not wholly paid and stock wholly unpaid for—issued, therefore, in violation of the constitutional provision, is not void, though as to the subscriber or purchasers not innocent, the corporation would, in default of full and lawful payment, have the clear right to cancel the issue to the extent of the default, how is it to be held that a note accepted by the corporation in payment, is void? Its acceptance would constitute no greater violation of the Constitution than does the issuance of stock for no equivalent in value. If the issuance of stock without any payment does not render void the stock, the giving of a note in payment does not make void the note. The corporation can not be required to accept it as property, but if it does accept it, the maker can not defeat it in the hands of an innocent holder.

The constitutional provision was not intended as a shield for the stockholder who has not paid for his stock. It was not framed for his benefit. It was aimed against his acquiring stock except upon lawful payment. It was designed for the protection of the corporation and its creditors. It emphasizes the stockholder's obligation to make full and lawful payment in accord with its mandate, rather than furnishes him a defense when he has failed in that obligation. Its purpose is to give integrity to the corporation's capital. It is to prevent false pretense at its hands, and avoid imposition upon the public. None of these objects would be promoted by declaring a note given by a subscriber for stock uncollectible in the hands of a bona fide holder. Neither the public nor the corporation could derive any protection from the wrong the Constitution is intended to prevent by releasing the subscriber from the obligation of his note and making an innocent purchaser suffer loss. To strike down the note in the hands of a bona fide holder would enable the subscriber who has violated

the Constitution to take advantage of his own wrong. Not only so, but instead of serving as a punishment of the perpetrator of the wrong, it would inflict the penalty upon one innocent of the wrong. That is not justice and it should not be the law. The doctrine which protects the bona fide holder of negotiable bills is a favorite rule of equity. It illustrates the value of equity and gives virtue to its powers. It is a rule of good conscience. It is necessary to the security and freedom of circulation of negotiable instruments which serve the needs of the innumerable business interests of the land; and is founded in the broadest principles of public policy. There is nothing in the constitutional provision which in any way indicates that as a rule of right this salutary doctrine should be made to yield to the plea of his own wrong by one who had violated the provision.

The Constitution nor any statute intimates that an innocent holder of a note given in such a transaction as we have instanced, should suffer the loss rather than the maker of the note who enabled the loss to be occasioned. In the absence of such provision there can be no warrant for a court's adding any such penalty. Oates v. Bank, 100 U. S., 239, 25 L. Ed., 580.

San Antonio Irrigation Company v. Deutschmann, 102 Texas, 201, 105 S. W., 486, 114 S. W., 1174, is cited as an opposing authority. But that case did not concern a note given for stock in the hands of a bona fide holder. It related to an agreement whereby an incorporator was to have indefinite time in which to pay for his stock. Such an agreement is plainly in violation of the Constitution, and the court so declared it. The opinion also called it "void," but we fail to see how that statement affects this question. It was void in the sense that it was unenforcible by Deutschmann who was invoking it in the case. It is clear that is what the court meant to declare. The language used in the opinion is to be understood as applying to the case before the court. If the decision was intended as a holding that a note, not property, given in payment for stock is void in the hands of an innocent holder, the court could not, without overruling it to that extent, have held, as it did in the later decision of Fidelity & Deposit Company v. Wiseman, that stock for which nothing had been paid was good in the hands of such a holder. But the decision was not referred to in the Wiseman case.

Ater v. Rotan Grocery Company, 189 S. W., 1106, is a holding contrary to the views here expressed, but the only decision from this court cited in support of it is Gilder v. Hearne, 79 Texas, 120. As we have already shown, Gilder v. Hearne dealt with a usurious note, which the statute, as to the interest, expressly declares to be void.

Snoddy v. American National Bank, 13 S. W., 127, 88 Tenn., 573, 7 L. R. A., 705, 17 Am. St. Rep., 918, a decision by the Supreme Court of Tennessee, is sometimes referred to as a contrary authority upon this question. But that court has been particular to point out in the later case of Jefferson Bank v. Chapman-White-Lyons Company, 122

Tenn., 415, 123 S. W., 641, that the note dealt with in the decision was void by express statute. In the later case it was held that the note of a corporation for an ultra vires purpose and issued in violation of the public policy of the State, was enforcible in the hands of a bona fide holder.

A full discussion of the question here presented will be found in the able opinion of Chief Justice Huff of the Court of Civil Appeals for the Seventh District in Lockney State Bank v. Martin, 191 S. W., 796,—an opinion delivered after our granting of writs of error in the present case.

Where both parties are equally in fault, the condition of the defendant is preferable. So runs the ancient maxim. We think it disposes of Smyer's action against the insurance company for the interest paid by him on the note. If the giving of the note and mortgage lien in payment for the stock issued him was a violation of the Constitution, as he here now insists, he was as much a party to its violation as the insurance company; and in an attempt by him to recover the interest paid by him in the transaction on the ground that the Constitution was thereby violated by both, we see no reason why the law should favor him as against the insurance company.

The judgments of the District Court and Court of Civil Appeals are reversed, and the cause is remanded to the District Court. Judgment should be there rendered against Smyer on his action against both the insurance company and Washer, and in Washer's favor for the full amount of the note against Smyer as maker and the insurance company as indorser, together with foreclosure of the mortgage lien upon the land.

*Reversed and remanded with instructions.*

(Associate Justice Hawkins will later state his views.)