**VERMILION PARISH PEAT COMPANY and Land & Lease Company, Appellants,**

**v.**

**GREEN BELT PEAT MOSS COMPANY, Appellee.**

**No. 17591.**

Court of Civil Appeals of Texas, Dallas.

March 26, 1971.

Rehearing Denied April 23, 1971.

Bob J. Spann, McDonald, Spann & Smith, Corpus Christi, for appellants.

A. B. Conant, Jr., Shank, Irwin, Conant & Williamson, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

The principal question to be decided by this appeal is the validity *vel non* of certain shares of capital stock issued by a domestic corporation.

The action was brought by Green Belt Peat Moss Company (hereinafter referred to as Green Belt), a Texas corporation, against Vermilion Parish Peat Company (hereinafter referred to as Vermilion), and Land & Lease Company, both Texas corporations, in which Green Belt sought a declaratory judgment decreeing as invalid the issuance of 4,000 shares of capital stock of Green Belt to Land & Lease Company and also decreeing as being invalid a transfer of assets from Green Belt to Vermilion. Both Green Belt and Land & Lease Company filed motions for summary judgment. The court overruled the motion presented by Land & Lease Company and sustained the motion of Green Belt and rendered judgment decreeing that the issuance of capital stock of Green Belt to Land & Lease Company, and also the attempted assignment of assets of Green Belt to Vermilion, was illegal and void.

Land & Lease Company and Vermilion perfected their appeal and in five points of error contend that the trial court erred in granting Green Belt's motion for summary judgment because the summary judgment evidence demonstrated that the shares of capital stock were transferred upon a consideration recognized by law and were therefore not illegal or void; that the trial court should have sustained the motion for summary judgment of Land & Lease Company; and, in the alternative, that issues of fact were presented requiring a reversal of the judgment.

The material facts essential to a correct resolution of the points presented are without dispute and may be briefly summarized.

Green Belt received its charter on May 26, 1969. The total original issue of capital stock was 10,000 shares. The initial meeting of the board of directors was held on August 1, 1969. The minutes of the initial meeting contained the following:

"The meeting then proceeded to discussion of acquisition by assignment from Land and Lease Company, the lease on certain reserves of Peat (the term 'Peat' as used herein is derived primarily from Paille Finne, Cut Grass and Saw Grass) situated in and under the Florence Club Swamp near the town of Gueydan, Vermilian Parish, Louisiana. The lease to be acquired by Land and Lease Company, and the reserves of Peat described in the previous sentence, is that leased by Vincent & Welch, Inc., to Land and Lease Company under agreement dated April 25, 1969. Also discussed were related engineering studies and test data concerning the Peat reserves, and a sales organization dealing in the sale of agricultural products in the South and Southwest, which are to be acquired from Land and Lease Company, along with the lease. After a full discussion of the terms of such acquisitions, it was unanimously

"RESOLVED: that the Company acquire by assignment from Land and Lease Company, the lease on certain reserves of Peat (as recited above) together with the engineering studies, test data, and sales organization (as recited above) for a consideration of 40% of the original issue of capital stock of Greenbelt Peat Moss Company (a Texas Corporation) plus other rent and royalty obliga-

tions of lessee as set forth in the lease assignment referred to above.

"And be it further

"RESOLVED: that the total original issue of capital stock of the Company shall be 10,000 shares.

"And be it further

"RESOLVED: that the officers of the Company are authorized and directed to execute each instrument that may be necessary to close said transactions and all actions of said officers prior to and following the meeting in these connections are ratified, confirmed, and adopted on behalf of the Company."

On August 28, 1969, an instrument styled "Peat Humus and/or Peat Moss and Sphagnum Lease" was executed by Land & Lease Company as lessor and Green Belt as lessee. The instrument, in its initial paragraph, recites:

"This agreement entered into, effective as of the 28th day of August, 1969, by and between LAND AND LEASE COMPANY, a Texas Corporation domiciled in Dallas County, Dallas, Texas, herein represented by Landis C. Mahaffey, as authorized by resolution of its Board of Directors attached hereto and made part hereof, hereinafter referred to as 'Lessor' and GREENBELT PEAT MOSS COMPANY, a corporation domiciled in the State of Texas, with offices at Dallas, Texas, herein represented by James C. Chambers, as authorized by resolution of its Board of Directors attached hereto and made part hereof, hereinafter referred to as 'Lessee', * * *."

It is undisputed that the resolution of the board of directors of Green Belt, referred to in this paragraph, is that previously referred to and copied in this opinion.

In the next paragraph it is recited:

"In consideration of $10.00 which has been paid by Lessee to Lessor, together with 40% of the original issue of capital stock of Greenbelt Peat Moss Company, and other obligations of Lessee set forth herein, Lessor hereby leases and lets to Lessee the exclusive right to enter upon and use the land herein described for exploring, prospecting for and extracting peat humus and/or peat moss and sphagnum, * * * subject to the limitations hereinafter provided, the land to which this lease applies being located in Vermilion Parish, Louisiana, and described as follows."

The land described is the same land described in a lease between Vincent & Welch, Inc. as lessor and Land & Lease Company as lessee, dated May 30, 1969 and granting the right to explore for and extract peat humus and/or peat moss and sphagnum from the tract of land in Vermilion Parish, Louisiana.

Then follows paragraph 1 which is as follows:

"Subject to the other provisions herein contained, this lease shall be conveyed and become effective upon receipt by Lessee of cash or its equivalent contributed to capital in the amount of six hundred thousand dollars ($600,000) provided this condition is satisfied on or before December 10, 1969, and shall extend to January 10, 1970 (called 'Primary Term'), and as long thereafter as peat humus and/or peat moss and sphagnum is produced in paying quantities from sale Land and the minimum royalties are paid as herein provided."

The remaining provisions of the agreement relate to royalty payments and other conditions. It is undisputed that the terms and conditions of this agreement are not the same as those contained in the original lease between Vincent & Welch, Inc. and Land & Lease Company. For this reason the instrument dated August 28, 1969 may be described as a sublease.

It is stipulated that 4,000 shares of the capital stock of Green Belt was issued to Land & Lease Company on August 28, 1969, the date of the sublease agreement.

It is undisputed that Green Belt never received cash or its equivalent contributed to capital in the amount of $600,000 as provided in paragraph 1 of the sublease agreement.

On June 4, 1970, in a letter from Land & Lease Company to Green Belt, it was recited that the lease on the Vermilion Parish, Louisiana land is in default and therefore null and void.

On June 26, 1970, in a meeting of the shareholders of Green Belt, a contested resolution was passed transferring substantially all the assets of Green Belt to Vermilion. The resolution was not adopted by vote of at least two-thirds of the outstanding shares of the corporation.

Appellee Green Belt, by appropriate counterpoints, contends that this record demonstrates, as a matter of law, the illegality of the transfer of 4,000 shares of its capital stock and for that reason the judgment of the trial court was correct. A careful examination of the record before us, in the light of the applicable law, convinces us that appellee is correct and that the judgment of the trial court should be affirmed.

▆ The Constitution of the State of Texas, Article 12, Section 6, Vernon's Ann.St., provides:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received and all fictitious increase of stock or indebtedness shall be void."

Vernon's Ann.Tex.St., Business Corporation Act, Art. 2.16, provides:

"A. The consideration paid for the issuance of shares shall consist of money paid, labor done, or property actually received. Shares may not be issued until the full amount of the consideration, fixed as provided by law, has been paid. * * *

"B. Neither promissory notes nor the promise of future services shall constitute payment or part payment for shares of a corporation."

Thus by the plain and explicit terms of our Constitution and law a corporation is interdicted from issuing shares of its stock except for money paid, labor done, or *property actually received.* To determine the nature and character of the consideration for the issuance of the 4,000 shares of stock we look to the terms of the consideration clause of the sublease agreement. No one contends that the provisions of this clause are ambiguous. The consideration clause is purely contractual. By its terms the sublease is granted to Green Belt by Land & Lease Company in consideration of $10.00 and 40 per cent of Green Belt's capital stock. No other consideration than this is revealed by the instrument. No one contends that the $10.00 mentioned, standing alone, would constitute consideration. Hence, the issue is to whether a valid consideration passed in the form of "property actually received."

Much has been said and written on the question of what constitutes "property" that may be received by a corporation in consideration of the issuance of its shares of capital stock. Chief Justice Phillips speaking for the Supreme Court in Washer v. Smyer, 109 Tex. 398, 211 S.W. 985 (1919), discusses various types of property, as such, but concludes that the framers of the Constitution meant to place a narrow construction on the term "property" when tested in the light of valid consideration for stock. He concluded that by the term "property" as used in the Constitution means property readily capable of being applied to the debts of the corporation. See also Cole v. Adams, 92 Tex. 171, 46 S.W. 790 (1898), and Woodson v. McAllister, 119 F.2d 924 (5th Cir. 1941). While it is true, as stated by Chief Justice Phillips in Washer v. Smyer, supra, that

the different forms of property and the different purposes for which corporations may be created make it impossible to lay down other than general rules upon the subject, it seems settled that an interest in a leasehold estate, *actually conveyed,* may be sufficient to meet the constitutional and statutory requirements of valid consideration. McAlister v. Eclipse Oil Co., 128 Tex. 449, 98 S.W.2d 171 (1936) and Vehle et al. v. Wagner et al., 201 S.W.2d 636 (Tex.Civ. App., El Paso 1946).

However, the question of whether the sublease was "property" within the meaning of the Constitution and statute is not controlling of the question here presented for the simple reason that the mandatory provision of "property actually received" is demonstrated by the record not to have occurred. An examination of the entire instrument executed on August 28, 1969 reveals that it did not become effective on the date it was executed but, to the contrary, it contained express provisions that the same would not become effective until the happening of a future event. It is expressly provided that the lease shall not be conveyed or become effective until Green Belt had received in cash or its equivalent a capitalization in the sum of $600,000, and that this "condition" must be satisfied on or before December 10, 1969. Thus, we have an express condition precedent for the effective date of the agreement at which time the lease of "property" in question would be conveyed. The parties utilized the phrase "this lease shall be conveyed and become effective" thereby clearly indicating their intention to create such a condition precedent in the form of specified capitalization of Green Belt.

Green Belt never received the cash, or its equivalent, contributed to capitalization in the amount of $600,000 and therefore the condition precedent to the delivery of the "property" in the form of the leasehold interest was never contractually accomplished.

The contract of August 28, 1969 was executory in character. It amounted to nothing more than an agreement on the part of Land & Lease Company to sublease an interest in the Louisiana property contingent upon the happening of a specified event in the future. Such an arrangement will not and cannot meet the plain requirements of our Constitution and laws so wisely designed to undergird the value of shares of a corporation.

In United Steel Industries, Inc. v. Manhart, 405 S.W.2d 231 (Tex.Civ.App., Waco 1966, writ ref'd n. r. e.), shares of corporate stock had been issued partly in consideration for legal services to be performed in the future and partly in exchange for certain land. The court held that the issuance of the stock was illegal and void because the consideration was not in conformity with the constitutional and statutory requirements since the labor had not been performed nor the property conveyed.

Being fully convinced that the record demonstrates, as a matter of law, that there was no "property actually received" as consideration for the issuance of the shares, the trial court was correct in decreeing cancellation of such attempted transfer of the stock to Land & Lease Company.

■ Appellants argue that, as revealed by affidavits in the record, appellee, and its agents and employees did certain acts and took steps following the execution of the agreement on August 28, 1969 which demonstrated the ratification of the terms of the agreement. The complete answer to this argument is that the parties to an illegal contract, as illustrated by the Supreme Court in Dunagan v. Bushey, 152 Tex. 630, 263 S.W.2d 148 (1953), cannot waive its illegality. "Indeed, nothing can be done by the parties to the agreement to give it validity. Consequently, an illegal contract cannot be ratified by either party to the agreement. Nor, as a general rule, can the parties to such a contract render it enforceable by acts which, under ordinary circumstances, would operate against them as an estoppel." 13 Tex.Jur.2d, Contracts, § 220, p. 445, and cases therein cited.

Since the original issue of 4,000 shares of stock to Land & Lease Company was in contravention of the constitutional and statutory provisions it necessarily follows that the act of Land & Lease Company in attempting to vote the shares of stock in a subsequent corporate meeting to effectuate the transfer of substantially all the assets of Green Belt to Vermilion was invalid, as held by the trial court. Moreover, Article 5.10 of the Texas Business Corporation Act makes it a necessary requirement to any disposition of all or substantially all of the corporate assets, that there must be an affirmative vote of at least two-thirds of the outstanding shares of stock. This statutory requirement was not complied with when an effort was made to transfer the principal assets of Green Belt to Vermilion on June 26, 1970.

We find that all of appellants' points of error are without merit and are overruled.

The judgment of the trial court is affirmed.