PARK v. RICH et al.   (No. 86–2888.)

(Commission of Appeals of Texas, Section B. June 11, 1919.)

1. CORPORATIONS ⬤⟿244(1) — LIABILITY ON UNPAID STOCK—EFFECT OF TRANSFER—GOOD FAITH OF TRANSFERORS.

Where incorporators and subscribers made affidavit that the stock was fully subscribed and paid, caused the corporation's books to so show, had stock issued to themselves as fully paid and nonassessable, and represented, in sale of the stock, that it was fully paid, purchaser paying full face value therefor, but, although they had paid for the stock the amount of merchandise recited in their affidavits, the cash amounts recited as paid were in fact not paid by them, the question of their good faith in their sale of the stock was immaterial on the question of their liability for amounts unpaid on their stock.

2. CORPORATIONS ⬤⟿232(1) — STOCKHOLDERS' LIABILITY—UNPAID SUBSCRIPTIONS—RECITALS IN APPLICATION FOR CHARTER.

Where original incorporators and subscribers, in their affidavit in application for char-

ter, set forth, as fully paying for stock subscribed by them, payments partly in merchandise and partly in cash, they could not claim, as a defense to their liability for the amounts recited as cash, which were, in fact, not paid, that their valuation in such affidavit of the merchandise turned over by them was too low.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by M. C. H. Park, trustee in bankruptcy, against B. T. Rich and others. Judgment for plaintiff was reversed and remanded by Court of Civil Appeals (177 S. W. 184), and plaintiff brings error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed.

J. D. Williamson, of Waco, for plaintiff in error.

Spann & Spann, of Temple, and Sleeper, Boynton & Kendall, of Waco, for defendants in error.

SADLER, J. B. T. Rich, S. B. Stitt, Frank Leahy, and Joe S. Thompson organized the Rich Dry Goods Company with a capital stock of $15,000, and procured a charter from the state October 21, 1909.

The subscriptions for the stock were made as follows: Rich, 50 shares; Stitt, 64 shares; and Leahy, for himself and Thompson jointly, 36 shares. The shares were of the par value of $100 per share.

In the application for the charter Rich, Stitt, and Leahy made affidavit that the capital stock was fully subscribed and paid up. Payments were set forth as follows: Rich, $3,360 in goods, wares, and merchandise, and $1,640 in cash; Stitt, $4,240 in goods, wares and merchandise, and $2,160 in cash; Leahy, acting for himself and Thompson, $2,400 in goods, wares and merchandise and $1,200 in cash. On the acceptance and filing of this charter, organization was had, and Rich, Stitt, and Leahy became the officers of the corporation. Certificates of stock were issued to each of the subscribers, in accordance with the subscriptions set forth in the affidavit, that is, 50 shares to Rich, 64 to Stitt, and 36 to Leahy, shown to be fully paid and nonassessable. Entry was made on the books of the corporation showing the amount of capital stock to be $15,000, and that it was fully paid. The association was chartered as a mercantile company, and thereafter conducted a dry goods business.

About the 31st day of January, 1910, the incorporators sold their shares of stock to one Hallenbeck, who paid the full par value therefor; and he and his sons, as stockholders, continued to operate the business of the corporation for about one month, when they sold their entire stock to one Cordell, who operated until February 17, 1911, when the corporation was adjudged a bankrupt. M. C. H. Park was thereafter elected, and qualified as trustee about March 20, 1911.

Thereafter the trustee applied to the referee for an order making a call upon defendants for the unpaid balance due by them on their stock subscriptions, wherein they answered. On a hearing before the referee in bankruptcy it was determined that in the organization of the corporation the defendants had not paid their stock subscriptions, and an assessment was made against them. The trustee was authorized to file suit to recover from them the amount unpaid. This order undertook to determine the amount which each original subscriber had failed to pay in on his stock, but permitted the shareholders to urge any defenses against the recovery which might be authorized at law. The amounts found due by the referee were in excess of the amounts found due by the jury.

Suit was filed in the district court of McLennan county against all of the original subscribers, and judgment recovered by the trustee against Rich for $1,640, Stitt for $2,160, and Leahy and Thompson jointly for $1,200; these being the amounts of cash which were shown in the affidavit to have been paid in by each subscriber on his respective stock and found by the jury not to have been paid.

On an appeal to the Court of Civil Appeals by the defendants the judgment of the district court was reversed and remanded. 177 S. W. 184.

On motion for rehearing, while receding from some of the holdings announced in its original opinion, the Court of Civil Appeals adhered to the judgment reversing and remanding the case.

It will perhaps be of assistance in understanding the decision of the questions presented by the writ of error to give a further statement of the record.

The defendants in the district court, among other defenses, sought to avoid liability on the proposition that they had in good faith, for full face value, sold and transferred their stock to the Hallenbecks, at a time when the corporation was a going and solvent concern, and that they should thereby be relieved from liability for any unpaid portion of their subscription, on the theory that Hallenbeck should be held therefor. They also contended that, in order to hold them liable, it was necessary for the trustee to show want of good faith in them, and also to show that Hallenbeck did not know that they had not fully paid their subscriptions, or that he did not have knowledge of facts sufficient to put on inquiry which would disclose the fact of nonpayment by them.

The defendants admitted that they had not paid the amounts of cash subscriptions recited in the affidavit in the purchase of their stock; that the stock had been issued to them

fully paid up and nonassessable; that the books of the company showed the stock to be fully paid; that in the sale to Hallenbeck they represented to him that it had been fully paid; and that he paid them full face par value therefor. The uncontradicted evidence shows that the only payments made by the stock subscribers upon their stock to the corporation was by the transfer of certain merchandise which they owned jointly, being goods, wares, merchandise, fixtures, notes and accounts, bought by said parties from the Shotwell Dry Goods Company, a corporation, on the 13th day of September, 1909, same being located in the J. B. King building, on the corner of Mosquite avenue and Market street, in the city of Rogers, in Bell county, Tex., and of the reasonable cash value of $10,000, the interest of each respective subscriber being therein as follows, to wit: Rich, $3,360; Stitt, $4,240; Leahy and Thompson, $2,400—that they did not make any other payments on their stock.

## Opinion.

[1] We think that the decision of this case rests upon the question of the primary liability of the defendants in error on their contracts of subscription as shown by the uncontradicted evidence. We are presented with a statement of facts which shows without contradiction that the defendants in error, as the original subscribers for the stock, made affidavit that it was fully subscribed and paid, that they had caused the books of the corporation to so show, and had issued stock certificates to themselves as fully paid and nonassessable; that in the sale to Hallenbeck they represented the stock to be fully paid, and that he paid them the full face value therefor; that the stock was unpaid in the amounts of cash asserted in the affidavit to have been paid by the respective subscribers; that Leahy was acting for himself and Thompson in the transaction.

Under this record we think that good faith on the part of the defendants in their sale to Hallenbeck is immaterial, but, if material, that it does not arise on the evidence. Their testimony as to their good faith in the transaction with Hallenbeck is, at most, only their conclusion based upon the facts shown. These facts unquestionably establish, in our view, the want of good faith, since defendants admit that they had not paid into the treasury of the corporation the amounts of money shown in their affidavit; that they knew that the stock was unpaid when they sold to Hallenbeck; that they represented it as fully paid, and accepted property from him at a valuation which compensated them for the stock as fully paid. Their acts, as disclosed, evidence a want of good faith on their part in the disposition of the stock, and the conclusion testified to cannot find its support in any fact established by the evidence. We apprehend that it cannot with reason be maintained that the bona fides of the defendants in this transaction arises.

However, we are not to be understood as holding that their good faith in selling to Hallenbeck would relieve them from the payment of any balance due to the corporation by virtue of their contract in subscribing for the stock.

We are of the opinion that there is no evidence in this record tending in the slightest to charge Hallenbeck at the time of the purchase of this stock from the defendants with any information which would put him on notice or on inquiry as to whether the defendants had paid for their stock or not. All the circumstances brought to his knowledge, as shown by the record, were to the effect that the stock had been fully paid up. But, even should there have been circumstances presented to him which required investigation on his part, the evidence shows that every source to which he could have gone for information would have sustained the contention of the defendants that the stock had been fully paid up. The affidavit on which the charter was issued, the books of the corporation, and the stock certificates themselves, all were confirmatory of the assertion made by the defendants in the sale of the stock to Hallenbeck.

This is not a case wherein there has been a sale of a stock subscription prior to organization; but here every step necessary to a completion of the transaction had been taken, and the stock on its face was a certificate of payment in the nature of a receipt acknowledging full performance by each subscriber of his obligation to the company. Parties dealing with this stock in the hands of the certificate holders had the right, and the creditors dealing with the corporation were authorized, to assume that the transactions between the original subscribers and the corporation were free from any vice, and that the contract of organization had been legally and fully carried out.

[2] The real issue presented in this case is as to the payment for the stock by the subscribers. The uncontradicted evidence is to the effect that goods, wares, and merchandise were put into the concern at a valuation of $10,000. This was the property which the defendants had taken in their purchase of the assets of the Shotwell Dry Goods Company. This was the valuation placed upon the property by them. It was accepted at that valuation as a payment of that amount of money upon the capital stock of the corporation. If this property was of value in excess of that amount, the corporation simply profited thereby; but defendants were bound by the value at which they tendered it and at which it was accepted. The subscribers offered in payment on their stock subscriptions property at a fixed valuation.

The corporation when organized accepted this property at that valuation as the equivalent of a cash payment on the obligation of the subscribers. They are bound by that valuation, and cannot defeat their further obligation and promise to pay cash for the remainder of their subscription by showing that the property at the time of its transfer to the corporation was of a greater cash value than fixed by them in the sale. That would be in violation of their contract of sale to the corporation.

What we have said here relative to the situation of a subscriber who transfers property at a fixed valuation to the corporation in payment for his stock must not be construed as applying to the corporation or creditors in the event it should be shown that the property so given had been fraudulently foisted on the corporation at a fictitious value.

As we construe the contract of the original subscribers to this stock, they bound themselves to convey to the corporation organizers for its benefit certain property at an agreed valuation in payment for $10,000, of the stock for which they subscribed, and then agreed to pay the balance in cash. They failed to perform the latter part of their contract. They were the organizers of the company, and, as its trustees, failed to require payment as contracted, but accepted less than the full performance on the part of themselves. The corporation, under their trusteeship, issued the full amount of stock, thus receipting for full payment. Whether it was intended thus to defraud the corporation and its creditors is of no moment. To permit subscribers to take advantage of such a transaction would be compounding a fraud upon the company and those who dealt with it in the faith of its stock having been fully paid and in the conscious recognition of the verity of defendants' affidavit and the records of the corporation made under their authority. 7 R. C. L. §§ 236, 254, 389, 395.

The uncontradicted facts in this record show that these defendants in error promised to pay to the corporation certain amounts in cash in the purchase of stock and the satisfaction of their subscriptions. They received the full amount of stock from the corporation. They have not paid their cash obligations. The creditors of the corporation are entitled to have them made to comply with their promise to the company. The judgment of the trial court, based on the jury verdict, imposes no greater burden upon them than is laid upon them by the law and by justice. The right of this matter having been determined by the judgment of the trial court, we see no reason, in justice or law, for sending this case back to the trial court. Such errors as may have crept into the record on the trial have not resulted in an un-

just verdict, nor in a judgment which is not supported by the facts and the law. Eliminating every error charged to have been committed on the trial of the case, and still no other judgment than that which was rendered by the lower court would be justified by the record thus purged.

There are perhaps errors pointed out in the opinion of the Court of Civil Appeals which, but for the condition of this record, might justify a reversal; but we are of opinion that these errors become immaterial under the record as presented here.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes