**COMMONWEALTH BONDING & CASUALTY INS. CO. v. HOLLIFIELD.
(No. 107–2949.)**

(Commission of Appeals of Texas, Section B.
Jan. 14, 1920.)

**1. Appeal and error ⬩1094(1) — Supreme Court bound by findings of trial court and Court of Civil Appeals.**

If there is evidence in the record raising the issue of fact found by the trial court and the Court of Civil Appeals, the Supreme Court is bound thereby.

**2. Corporations ⬩99(1)—Payment by subscriber into surplus funds not payment on "capital stock."**

An amount which the subscriber to corporate stock was to pay into surplus funds of the company in consideration for permitting him to subscribe was not such a payment on the "capital stock" as is contemplated in Const. art. 12, § 6, and Rev. St. art. 1146, prohibiting issuance of stock for notes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Stock.]

**3. Corporations ⬩91 — General meaning of word in subscription contract should be followed.**

In suit to cancel notes given on subscription to corporate stock, in absence of pleading raising issue as to construction of "securities" as used in subscription contract providing for payment in cash or securities, general signification of word should be followed.

**4. Corporations ⬩99(2)—Stock may be paid for in securities; "property."**

Securities may be used in payment for corporate stock, and are not inhibited by Const. art. 12, § 6, or Rev. St. art. 1146; "securities" being property (citing Words and Phrases, "Property").

**5. Corporations ⬩99(1) — Subscription contract calling for payment in cash or "securities" valid.**

Contract to subscribe for stock in insurance company, paying $10 a share "in cash or securities to be approved by the insurance department," held a valid obligation not inhibited by Const. art. 12, § 6, or Rev. St. art. 1146, securities not meaning notes of subscriber, which he executed to organization company secured by deed of trust on realty to secure his liability under contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Security.]

**6. Corporations ⬩76—Subscription contract, with subscriber's notes securing it, became binding on acceptance.**

Where subscriber to stock in insurance company agreed to pay in cash or securities approved by insurance department, and on organization of company organizing company by proper transfer delivered to it subscription contract and subscriber's notes and deed of trust executed to secure such contract, on acceptance they became binding contracts between insurance company and subscriber, who became obligated to pay for his stock in cash or approved securities.

**7. Corporations ⬩92—Evidence held to show subscriber paid cash for stock, and that his notes were contribution to surplus.**

In suit by subscriber to stock in insurance company to recover money paid and to cancel notes claimed to have been given for stock in violation of Const. art. 12, § 6, and Rev. St. art. 1146, evidence held to show subscriber became possessor of stock on cash payment, and that notes and deed of trust sought to be canceled represented his obligation as to surplus.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by I. P. Hollifield against the Commonwealth Bonding & Casualty Insurance Company.   From judgment for plaintiff, defendant appealed to the Court of Civil Appeals, which affirmed (184 S. W. 776), and defendant brings error.   Judgments of the Court of Civil Appeals and trial court re-

versed, and judgment rendered for defendant on recommendation of the Commission of Appeals.

Speer & Brown, of Ft. Worth, and Presler, Thorne & Hamilton, of Memphis, for plaintiff in error.

Moss & Leak, of Memphis, for defendant in error.

SADLER, J.  The disposition to be recommended in this case rests upon whether the three notes sought to be canceled were given by Hollifield and accepted by the insurance company in payment, or part payment, for the capital stock of plaintiff in error.

The Court of Civil Appeals by a majority opinion held that the transaction was such as to bring it within the inhibition of the Constitution and render the notes nonenforceable as between the corporation and Hollifield, and affirmed the judgment of the trial court. Chief Justice Huff dissented from the affirmance, holding that the notes are valid obligations. 184 S. W. 776. We refer to the several opinions by the justices of the Court of Civil Appeals for a statement of the facts, except in so far as we may call attention to erroneous findings drawn by the majority opinion from the testimony.

Before passing to a consideration of the case in hand, it may be proper to say that we have had occasion to examine a great many decisions of our courts, wherein the validity of subscription contracts and of notes held by the Commonwealth Bonding & Casualty Insurance Company have been called in question. The facts in this case present an entirely different question from those raised in the cases which have been called to our attention, or to which we have recurred on our own initiative. Those cases have not been of any material assistance in the determination of the instant case.

The trial court, followed in the majority opinion by the Court of Civil Appeals, found that the notes involved herein were given by Hollifield, and accepted by the plaintiff in error, in payment for stock in the corporation, and that the company issued the stock on the faith of such notes as payment therefor. On the basis of this finding, the 62½ shares were held to be absolutely void under article 1146, R. S., and to constitute no consideration for the notes and deed of trust sought to be canceled.

[1] If there is evidence in the record raising the issue of fact found by the court, we are bound thereby, and the judgment of the Court of Civil Appeals will have to be affirmed. In view of the record, which we have very carefully examined, we are of opinion that there is no evidence supporting or forming a basis for the findings of fact supporting the judgment of the trial and appellate courts.

[2] We think that a fair and reasonable construction of the subscription contract is: That Hollifield subscribed for 62½ one-tenth shares, of the par value of $10 each, in the capital stock of a corporation to be thereafter organized, and contracted to pay therefor $625. He further contracted to pay the sum of $30 per share on the surplus fund of the corporation. It may be conceded that as an additional consideration for permitting Hollifield to take stock at $10 per tenth share, he promised to pay into the surplus fund this certain sum. We do not apprehend that the amount which should go to surplus can be treated as such payment on the "capital stock" as is in contemplation of the Constitution and statutes of this state.

Corporations are authorized by our law to be organized upon certain fixed legal requirements. One of these is with reference to its "capital stock" and the par value thereof; that is the ratio of division into increments of the total sum which shall constitute its "capital stock." This ratio or division is denominated "shares." When these "shares" are paid for in the manner prescribed by the statute, no other or additional payments arise under or by virtue of law. No additional sums which the party subscribing for stock may contract to pay to the corporation, in excess of the legal value of the shares for which he subscribed, should be considered or treated as payments for such shares within contemplation of law.

[3, 4] We construe the contract of subscription to call for a payment for the "stock"; that is, for the 62½ shares of the par value of $10 per share "in cash or securities to be approved by the insurance department." The trial court finds that these "securities" were to be approved by the company. There is no evidence to sustain this finding. The only evidence in the record touching the interpretation put upon "securities" by the parties is that they were to be approved by the insurance department of Texas. There is no pleading raising an issue as to the construction of the word "securities" as used in this contract. Its general signification should be followed. "Securities" may be used in payment for stock, and are not inhibited by the Constitution or by law. Cole v. Adams, 92 Tex. 173, 46 S. W. 790. "Securities" are property, and are so treated by all text-writers and courts. See "Property," Words and Phrases, vol. 6, p. 5693.

The distinction between the word "securities" in its general signification, as apparently used in this contract, and the notes of the obligor is that "securities" are property already existing, the possession and ownership of which is fixed in the obligor; while the notes of such obligor do not become "securities," property, until they have passed from him into the hands of another, who holds as a possessor and owner. His own

note, as long as it remains in his possession, is not a security. And when delivered by him to a third party, covering an obligation then existing, it is only a continuation of that obligation. It cannot be property owned by him passing to such obligee. The contract in this instance is to be treated as having been made in contemplation of law. It must be held to manifest the intention of the parties that the "stock" shall be paid for in money, or in such "securities," property, possessed by Hollifield, as may under the terms of law be accepted in payment for the stock in the corporation. The contract must be held, also, to manifest the intention of the parties that such "securities" will meet the approval of the authorized officers whose duty it is to determine the value for which the corporation may accept them in payment for its "capital stock." It is to be presumed from the contract that it was within the minds of the parties that these "securities" would be such as in law would require their approval as property by the insurance department.

There is no testimony in this record presenting any evidence which tends to sustain the finding that the consideration for the notes and deed of trust to the organization company was "the promise that the stock would issue to him as soon as the defendant company was organized," by the acceptance of the notes as payment therefor. So far as we have been able to discover from a very careful investigation of the record, there is no evidence as to any representations having been made to Hollifield that stock would issue to him for the notes. The Court of Civil Appeals is in error in stating that—

"Prior to December 1, 1912, the first note was paid by appellee, and on that date he renewed the remaining three notes."

The evidence shows conclusively that this transaction was not consummated until the 20th day of December, 1912, although the agreement may have been made prior to that date touching the settlement of the lawsuit in the district court of Tarrant county. We find nothing in the record to sustain a finding that—

"The organization company took plaintiff's notes for $2,187.50 in payment for the 62½ shares of stock to be issued by the defendant company."

There is no evidence to sustain the finding that the three notes for $565.50, together with the deed of trust securing same, "were taken in payment of the stock, which was then issued to the plaintiff at Ft. Worth, Tex."

[5] We conclude that the subscription contract constituted a valid obligation, and that it was not inhibited either by the Constitution or by the statute.

The evidence establishes without contradiction, in our view, that, without any representation on the part of the organization company, Hollifield, in furtherance of and in rendering definite the period of payment, executed his four notes to the organization company, secured by a deed of trust on real estate. He thus continued his obligation and secured his liability arising by virtue of the subscription contract, in the event same should be accepted by the intended corporation when organized. So far there is nothing in the record that intimates in any wise that these notes and deed of trust were such "securities" as were contemplated by the subscription contract and by the parties to be accepted in payment for stock.

After the execution of these notes to the organization company, the corporation was organized under the laws of Arizona. There is no question raised in this case that any of the rights of Hollifield were prejudiced by the procurement of the charter under the Arizona law.

[6] Upon the organization of the insurance company, the organization company by proper transfer delivered the subscription contract, the notes, and the deed of trust which it held, to plaintiff in error. It accepted them. They then became binding contracts between Hollifield and plaintiff in error. He thereby became obligated to pay for and accept 62½ one-tenth shares, at the par value of $10 per share, of the capital stock in the insurance company, and, in addition, to pay a certain percentage of his subscription to its surplus, to wit, all over and above the sum necessary to pay for the stock at its par value in compliance with law.

There is no evidence that the corporation, in receiving from the organization company the subscription contract, notes, and deed of trust, obligated or bound itself to receive or accept same in payment for its stock, and to issue stock thereon. There is no act of the parties evidencing such intention, and it does not arise upon a proper construction of the contract.

The corporation then held these papers as the obligation on the part of Hollifield to pay for his stock, and in addition to pay in on the surplus the amount evidenced by his notes. When he made legal payment covering the par value of the stock, for which he had subscribed in the corporation, it became obligated to recognize him as a pro rata shareholder in the "capital stock" constituting the basis of its existence. Until he made such payment, he was a stock subscriber.

The record appears silent with reference to any further actions interpretative of the intention of the parties until 1912, when, in October, a suit was filed by the company to recover on the four notes and to foreclose the deed of trust securing same. The testimony does not present any evidence from which it

can be concluded that the corporation had issued any stock to Hollifield prior to the settlement following the suit pending in the district court of Tarrant county. Hollifield's testimony, when given its most favorable consideration in his behalf, is incapable of being construed into the establishment of an evidential fact supporting, or tending to support, the contention that any stock in the insurance company had theretofore been issued to him. He testified:

"These new notes which I executed were given for the same consideration the old notes were—for stock in the Commonwealth Bonding & Casualty Insurance Company."

He further says:

"I paid part of it in cash and paid part by giving my notes."

In view of the record, this statement on the part of the witness only gives his conclusion with reference to the effect of the transaction, and cannot be construed into testimony from which arises any evidence that the stock was to be, or was, paid for by his notes. He further testified:

"It is not a fact that I did not receive any certificate of stock until I had paid this $687.50 note. This is not the first stock I received; they sent me some first and tried to work it through another company. I suppose it was the company [defendant] that did it; I don't know that it was—the Commonwealth notified me—no one talked to me in person about it, and I talked to no one about it. I do not remember just exactly how it came up, but there was an effort made to work some other company into it. I guess Stewart was the one who made the effort. I think they put it off on him. He did not call on me in that connection. I returned the first stock I got to the Commonwealth, and they sent me this stock afterwards. I executed this certificate which you have been asking me about and when I did I sent the stock back to them at Ft. Worth—to the Commonwealth. I think I am sure about that matter. I swear that to be the truth as well as I remember. I know I sent one certificate back, and they sent this one in place of it. "Q. Is this the certificate, or did you get one from this company, the Bankers Guaranty Trust Company? A. Well, it seems like I did."

This is all the testimony apparent in the record on which to base a conclusion that the plaintiff in error had issued any certificate of stock to Hollifield prior to that involved in the instant case. As we construe this testimony, it contains no evidence supporting the theory that the insurance company had issued a certificate of stock to Hollifield and delivered same prior to December 20, 1912. It does appear that some character of certificate of stock had been previously sent to him, and by him returned to the company, but as we construe the testimony, it establishes that such certificate was in another and different corporation, to wit, the Bankers' Guaranty Trust Company, and the record wholly fails to account for the circumstances surrounding this transaction.

We are then brought to a consideration of the effect of the transaction involved in the settlement of the lawsuit and its value evidentially upon the question in hand. It appears that the certificate of stock which was delivered to Hollifield bore date of June 12, 1912. The record is silent as to whether this certificate was written up on the date which it appears to bear, and held by the company for delivery upon lawful payment by Hollifield, or whether it was dated back. This certificate was not delivered to him until after he had paid $687.50 to the company, which amount paid for his pro rata of the capital stock under the subscription contract.

The three notes involved in this suit were executed in furtherance of a settlement of the Tarrant county litigation, and in extension of the time of payment of an amount in excess of the cash required to pay for the stock for which Hollifield had contracted. It is unnecessary to decide whether this formed the basis of consideration for the extension notes, since in our view of the record it is established without contradiction that these new notes were simply given in renewal and continuation of the Hollifield obligation to pay in upon the surplus fund of plaintiff in error a balance due thereon by him. He had already paid in cash that amount requisite to his obligation for the stock.

[7] We, therefore, conclude that under the condition of this record, as made by the parties and here presented, the evidence established that Hollifield became possessor of the stock of the company, became identified as a pro rata owner of 10 shares of the stock constituting the basis of the corporation, upon the payment by him of $687.50; that the corporation then recognized him as such pro rata owner in its capital stock, and signified such recognition by delivering to him the certificate; and that the notes and deed of trust sought to be canceled represented his obligation as to surplus. Washer v. Smyer (Sup.) 211 S. W. 985, 4 A. L. R. 1320, and Thompson v. First State Bank (Sup.) 211 S. W. 977, authorize the holding here expressed. Such being our conclusion, it becomes unnecessary to discuss other questions presented.

We recommend that the judgment of the Court of Civil Appeals and of the district court be reversed, and that judgment be here rendered for plaintiff in error.

MONTGOMERY, P. J., did not participate in the consideration of this case.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.