MITCHELL v. PORTER. (No. 134-3029.)

(Commission of Appeals of Texas, Section B. June 16, 1920.)

1. Insurance ⬤�longdash⟩33 — Subscription contracts, calling for payment in money or securities, valid.

Stock subscription contracts, calling for payment in money or securities satisfactory to the insurance department of Texas, the corporation being a bonding and accident insurance company, held valid on their face.

2. Evidence ⬤�27441(9), 457—Stock subscription contracts not variable by parol.

Stock subscription contracts could not be added to, varied, or changed by ingrafting thereon a parol contemporaneous agreement as to the character of the "securities" called for as an alternative to payment in money by the subscriber, nor could the meaning of "securities" be modified or limited by showing a parol interpretation on execution of contracts, which were not ambiguous.

3. Insurance ⬤⟩33—Stock subscription, providing in alternative for payment in "securities," meant those proper to be used.

Stock subscription contracts, calling for payment in cash or in securities meeting the approval of the insurance department of Texas, meant such securities as constitute property, in contemplation of law, proper to be used in payment and satisfaction of a stock subscription.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Security.]

4. Corporations ⬤⟩76 — Stock subscription measured by Constitution and to be effectuated accordingly.

A subscription to stock in its legal effect is measured by the provisions of the Constitution, and must be effectuated in consonance with its terms.

5. Corporations ⬤⟩232(2)—Subscriber to stock held bound for portion of note representing subscription to surplus.

Subscriber to stock in insurance company, party to transaction whereby his note was accepted in payment for stock, and whereby he received stock, being estopped to deny legality of note in suit of creditors of company, held bound to its receiver for portion of note representing subscription to surplus, not within constitutional inhibition of issuance of stock for notes, particularly in view of fact burden was on him to show invalidity of note.

6. Appeal and error ⬤⟩1175(1)—Record held in condition to authorize rendition of judgment on stock subscription note.

In suit by a subscriber to corporate stock to cancel note and deed of trust given therefor, wherein receiver of company sought to recover on note in so far as it was given as a subscription to surplus, record held in such condition as to authorize rendition of judgment for receiver on note and deed of trust; subscriber alleging all necessary facts to show receiver

was holder of note which fell due before receiver's plea in reconvention was filed.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by C. T. Porter against J. W. Mitchell, receiver of the Commonwealth Bonding & Casualty Company, and another. From a judgment for plaintiff, the named defendant appealed to the Court of Civil Appeals, which affirmed (194 S. W. 981), and defendant brings error. Judgment of the Court of Civil Appeals and trial court reversed, and judgment rendered for defendant, on recommendation of the Commission of Appeals.

Ocie Speer and Marvin H. Brown, both of Ft. Worth, for plaintiff in error.

Carrigan, Montgomery & Britain, of Wichita Falls, and Glasgow & Kenan, and D. A. Holman, all of Seymour, for defendant in error.

SADLER, P. J. This case has presented many difficult questions arising on the pleadings and evidence, in view of propositions urged by the defendant in error in this court for the first time. To an understanding of the case, it is necessary to set out more extensively a statement of the pleadings and evidence than is contained in the opinion by the Court of Civil Appeals in 194 S. W. 981. In the opinion of the appellate court will be found the stock subscription contracts out of which this action grew. They are identical, except as to subscriber and shares for which subscription is contracted, with the contract before the court in the Hollifield Case, 220 S. W. 322, not yet [officially] reported.

The pleadings and evidence show that, after the execution of the subscription contracts, the organization company notified Porter that the stock had been subscribed, and that they were ready to perfect organization. Through proxy he attended the organization meeting, at which directors· were elected. After this meeting, and some time during December, 1910, he was called upon to pay the amount of his subscription to the stock and surplus, as per the terms of these contracts. It was agreed between him and the organization company that he should pay for his stock by the execution of the note in suit, secured by a deed of trust, which would be accepted in payment for the stock and in satisfaction of his obligation under the contracts, by the corporation to be thereafter organized, and that the stock would issue therefor.

January 1, 1911, Porter executed his note and deed of trust, and delivered same to the organization company. He testified that upon the acceptance by the organization company of the note and deed of trust, it delivered to him the original subscription contracts. Whether this was done or not is left uncertain in the record. His testimony on this question does not seem to have been called in' question, and yet we find in the record that the receiver introduced in' evidence the contracts as a basis for the alternative recovery sought by him. After the execution and delivery of the note and mortgage, it was decided to charter under the laws of Arizona, and Porter was a party to this decision of the stock subscribers, acting by proxy.

March 23, 1911, charter was obtained by the Commonwealth Bonding & Casualty Insurance Company under the laws of Arizona, and shortly thereafter a permit was obtained to do business in Texas. Shortly after the procurement of charter—the date not appearing in the record—the corporation had transferred to it by the organization company the note, deed of trust, and apparently the original subscription contract, and thereupon issued and delivered to Porter a certificate for 65 shares of stock in the corporation, accepting in payment therefor the note secured by the deed of trust lien. The corporation and Porter continued to act in obedience to the validity and binding effect of this arrangement until December, 1915, at which time Porter filed this suit to cancel and hold for naught the note and deed of trust, in the view that they were void under the Constitution, and tendered back to the corporation the stock which had been issued and which he held.

Prior to this suit, in September, 1915, at the instance of the creditors, the corporation was placed in the hands of receivers, one of whom J. W. Mitchell is. The receiver qualified and took charge of all of the assets of the corporation some time during the month of September, 1915. Thereafter, and prior to the filing of this suit, the court granting the receivership, by order duly entered, authorized the receiver tó collect the indebtedness due to the corporation.

In the petition of plaintiff he sets up the execution of the two stock subscription contracts, and alleges that at the time of their execution it was verbally agreed between him and the agent and representative of the organization company that his subscription contracts could be satisfied in the matter of payment for the stock by the execution and delivery of the note in question, secured by the deed of trust; that the word "securities," as used in the contracts, was agreed and understood to mean that 'it comprehended only his personal note, secured by a deed of trust on real estate; that such note and lien were the securities mentioned in the contracts requisite to the payment of his obligation therein, and to the satisfaction of the demand for stock in the corporation; that his note so secured should be accepted in full payment for the stock, and in discharge and liquidation of his obligation under his sub-

scription contracts; and that in accordance with this understanding and agreement the transaction was consummated by the corporation after its organization. He sought simply the cancellation of his note and deed of trust.

Thereafter, in January, 1916, the receiver answered by general denial and several special pleas, and then reconvened, seeking judgment on the note and foreclosure of the mortgage lien. He alleged that Porter was estopped to deny the legality of his note and his obligation thereon, in that he had received the stock of the corporation and had been holding himself out as a stockholder without having paid for his stock. In the alternative, the receiver asked, in the event the note should be held to be void, for judgment against Porter on the original stock subscription contracts, with a foreclosure of his mortgage lien. It appears from the record that by supplemental petition Porter replied to the plea in reconvention by exception, general denial, and also a special plea, setting up the four-year statute of limitation as a bar to the receiver's recovery. No such plea of limitation appears in the pleadings of the plaintiff as presented by the record, but in an examination of the supplemental answer by the receiver there appears, after his general denial and a further special plea of estoppel, a plea, in the nature of an exception and plea combined, wherein he seeks to avoid the four-year statute of limitation, setting up that the plaintiff cannot avail under his plea of limitation of four years, because the receiver's cause of action did not accrue until in September, 1915.

On the trial of the case, it appears that in making out the plaintiff's case it was admitted that the note and deed of trust were properly described in the petition, but the value of the real estate is neither pleaded nor proved. Neither in the pleading of the plaintiff nor in the pleading of the receiver is the note set out, except as to date, amount, rate of interest, maturity, payee, and payor. It was not introduced in evidence by either party. We have no further information with reference to the terms of the note, nor of the deed of trust. In making out the receiver's case, he introduced in evidence the subscription contracts, but the note and deed of trust are not shown to have been offered in evidence by him in support of his plea.

On the trial before the court, without a jury, judgment was rendered canceling and holding for naught the stock subscription contracts, the note, and deed of trust. The appellate court affirmed the judgment of the trial court in all things, and writ of error was granted on the petition of the receiver by the Committee of Judges, because one had been granted in Thompson v. First State Bank (Civ. App.) 189 S. W. 116. In the pe-

tition for writ of error are the following assignments of error to the judgment of the Court of Civil Appeals:

First. To the overruling of the seventeenth assignment of error, wherein it was charged that the trial court erred in granting plaintiff a judgment and in refusing defendant a judgment on the plea in reconvention.

Second. To overruling the fifteenth assignment of error, calling in question the correctness of the trial court's judgment in canceling the contracts of subscription.

Third. To the refusal to sustain the sixteenth assignment of error, to the action of the trial court in canceling the promissory note and deed of trust.

Fourth. To the holding against the eighteenth assignment of error, attacking the action of the trial court in permitting plaintiff to testify to the understanding and agreement had with the organization company as to the meaning of the written contracts of subscription.

These are the only questions presented in the application for writ of error. After the case reached the Supreme Court, the defendant in error, in addition to his counter propositions urged in the appellate court, presents two propositions:

First. That the receiver is not entitled to recover judgment on the note sued upon in reconvention, because it was not introduced in evidence by either party; the agreement being only to the effect that the note was properly described in plaintiff's petition.

Second. That, if the receiver is entitled to any recovery, that recovery is limited to the amount requisite to pay for the stock issued to Porter at its par value, and that the receiver is not entitled to recover any part of the subscription or note liability, representing an amount due on surplus.

### Opinion.

[1] The stock subscription contracts on their face are valid obligations. Commonwealth Bonding & Casualty Insurance Co. v. Hollifield, supra. Plaintiff seeks to show their invalidity by parol evidence that at the time executed it was the agreement that the amounts contracted to be paid could be satisfied and liquidated by the note of Porter, secured by a deed of trust on real estate; also that it was specially agreed at the time that the word "securities," as used in the contracts, meant the note of the plaintiff so secured. He charged this agreement to have been made in parol as a part of the contracts, and that it was also stipulated that the note and deed of trust should be accepted by the corporation, when organized, in full payment for the stock; that the certificates should issue in consideration of the note, and that thereafter, upon the organization

of the company, this contract was carried out by the parties.

[2] We cannot consent to the proposition that the contracts of subscription can be added to, varied, or changed, by ingrafting thereon the parol contemporaneous agreement; nor can we agree to the proposition that the parol testimony can modify or limit the meaning of "securities," as it is comprehended in the written contract, by showing a parol interpretation of its meaning by the parties at the time of the execution of the contract. Parties contracting are presumed to be acting in good faith with each other, and in a lawful manner. The contracts of subscription are not ambiguous.

The pleading and evidence does not present a question of fraud in inducing Porter to execute the contracts, but seeks to destroy the legality of that which he executed, by the interpretation given to its terms by the parties in a contemporaneous parol agreement. Should it be conceded that the word "securities" is of such doubtful meaning as to authorize proof of its force in these contracts, yet, when the contracts are properly construed, doubt is removed. The parties, by their writing, gave such definite force to the compass of the word as to remove any question with regard to what it comprehends.

[3] These contracts give Porter the option of paying his subscription for stock and surplus in cash or in such securities as will meet the approval of the insurance department of Texas. The general signification of "securities" is here clearly limited to that class which constitute property in contemplation of law, proper to be used by an obligor in payment and satisfaction of his liability for the stock of a corporation for which he becomes a subscriber. No matter what the parties may have agreed among themselves privately with reference to their intention as to the compass of their contract, the very fact that the "securities" which might be used in payment for the stock were to be approved by the insurance department manifests the evident intention to use only such as possessed the value and the legal requisites compelling their approval by the official upon whom rested the legal duty to protect the corporation and its creditors. There can be but one interpretation placed upon these contracts; that is, that they are binding obligations, unless their binding effect has been destroyed by the intervention of some subsequent act of the party.

[4] The contracts on their face show that Porter obligated himself to purchase 65 one-tenth shares of the stock in a corporation to be thereafter organized, which shares were to be of the par value of $10 each, and that he likewise contracted to pay into the corporation $30 per share additional as surplus. His subscription to the stock in its legal effect is measured by the provisions of the Constitution, and must be effectuated in consonance with its terms. There is no legal inhibition or legal limitation touching or affecting his subscription to the surplus, or controlling and directing the method of its payment.

Thus far the facts of this case are on all fours with the facts in the Hollifield Case, but the subsequent transactions differ widely from those shown in that case. After the execution of the subscription contracts, the organization company accepted the note and deed of trust from plaintiff, not, under the plaintiff's pleading and evidence, in continuance of his subscription liability, and in extension of the period of payment, but in full liquidation of those obligations, and in ultimate payment for the stock which the corporation, accepting such note and deed of trust, should issue. The corporation, thereafter organized with full knowledge of the transaction of its agents, accepted the note and deed of trust as payment for the stock, and issued the stock on the faith of such payment. Under Thompson v. Bank (Sup.) 211 S. W. 977, and Washer v. Smyer (Sup.) 211 S. W. 985, 4 A. L. R. 1320, the legality of this assignment depends upon the facts. Porter and the corporation continued in the recognition of the validity of the transaction for more than four years from its consummation. In fact, there seems never to have been any question raised with reference to the validity of the obligation until after the appointment of a receiver of the corporation, and not then, until this suit was filed.

We are now brought to a consideration of the most difficult question presented by the record. Primarily, the receiver sought to recover against Porter on the note and deed of trust. Its invalidity was asserted by Porter, and to escape the force of the plaintiff's contention the intervener had resort to estoppel. Under Thompson v. Bank, the receiver's right to recover on the note, to the extent that it represented the amount due by Porter to the corporation necessary to pay for the stock which had been issued to him at its par value, is not open to discussion. That right is clear.

It is, however, asserted by the defendant that, conceding the right of recovery to the extent of the par value of the stock, the receiver had no right of recovery for the surplus. It is contended that, as the stock which was issued to Porter was void as between the corporation and Porter, he received no consideration for that part of his obligation manifested by the note which represented an excess over the amount required to liquidate his liability for the stock at its par value. It is urged that the receiver is not entitled to recover on the note as to the surplus, because he stands in the place of the corporation, and is burdened with its existing limitation. The proposition is made

that the corporation could· not recover for this surplus, because the note was given in an illegal transaction, and being voidable in part, unenforceable in part, as between the parties a nullity, that, even though the subscription for surplus may have been valid, the whole transaction was rendered ineffective and unenforceable, because of partial vice; or, again, that the consideration for the subscription to surplus was the anticipated receipt by Porter of a valid issue of stock; that the stock issued to Porter, as between him and the corporation, was illegal, void, and carried with it no rights to Porter, and contained within it no obligations from the corporation, and that there was a complete failure of consideration for any part of his obligation to pay in on surplus; that the receiver cannot avail himself of an estoppel as to this surplus, because the creditor is not shown by the evidence to have extended any credit to the corporation on the faith of the subscription by Porter to surplus; that the estoppel applicable to the note, arising by law on the facts shown, cannot be extended beyond the par value of the stock and Porter's obligation arising therefrom.

The pleading of the receiver does not set up any facts raising an estoppel ·as to the surplus, nor is there any evidence in the record presenting the question. It is contended, however, by the receiver, and arises upon his pleading and the presentation of the case, that the subscription contracts and the note were treated as subscriptions for stock, and that there is no question made anywhere in this record, until the cause comes to this court, that the note represented partly an amount due on stock and partly an amount due for surplus. This proposition is clear, unless the contrary is presented in the very face of the pleading and the evidence, by the original subscription contracts, and by the facts as adduced. It appears that the original subscription contract provides that the stock is $10 per one-tenth share, par value, and that the surplus is $30 per share of stock. The subscription contracts were made on this basis, and may be legitimately considered as separate contracts; one touching the subscription for the stock, and the other an agreement to pay into the treasury of the corporation $30 per share of stock, to create a surplus fund. We may treat the contracts as being upon consideration as follows: The stock subscription is based upon the anticipated issuance of the stock and the benefits accruing therefrom; while the surplus subscription is in consideration of the opportunity to become a stock subscriber, and the corresponding obligation of the other subscribers, together with such additional benefits as may accrue to the stock in the business to be conducted by the corporation by reason of the enlarged initial assets.

The note, notwithstanding the claim that it was given in full satisfaction of the obligation created by the subscription contract, is but a continuation of Porter's original liability, and is his obligation to pay for the stock, and to pay in on the surplus in another form, by which the time of payment is extended. The issuance of the stock by the corporation, under the circumstances, may have given to Porter no enforceable right against the company as a stockholder, but placed it within his power to make the stock effective as against the corporation, either by paying his subscription for stock, or by the transfer of the stock to an innocent holder for value, even though it may have been nonenforceable between the parties. While the stock may be affected by vice in the transaction, yet it cannot be said to have been without value in Porter's hands; nor is it clear that any vice existed in the transaction. While as between Porter and the corporation it may have created no liability, enforceable against the corporation, yet it was subject to be purged of this defect, so as to bind the corporation to its incumbent demands. That part of the note which represents stock subscription is not void, and we are of opinion that the vice, if any there may be in it, under the transaction shown, is not such as to avoid the entire note.

[5] We are of opinion that, as Porter was a party to the transaction in which the note was accepted by the corporation in payment for its stock, and in which Porter received the stock of the corporation, and as he is estopped to deny the legality of the note as to the stock in the suit of creditors, he ought equally to be held bound for that portion of the note representing his subscription to surplus. Especially is this true in view of the fact that the burden was on him to show the invalidity of the note, and as there is nothing in the transaction which would render void or voidable his contract to pay in on surplus, and his note is but a continuation of that contract. We cannot say from the record that no consideration existed for Porter's promise to pay on surplus, nor can we say that the consideration for such promise has wholly failed. We are of opinion that under this record the trial court and the Court of Civil Appeals erred in holding that Porter was completely relieved from his liability to the receiver.

[6] We are asked to render judgment here for the receiver; and this brings us back to the question of whether the record is in such condition as to authorize the rendition of judgment on the note and deed of trust. The record shows that there was an agreement between the parties to the effect that the note and deed of trust were correctly described in the petition of the plaintiff; but it is not apparent that they were offered in evidence by either party, and, if we can render judgment on this record, it can only be

upon the basis of the pleadings and this agreement. The plaintiff alleges all of the necessary facts to show that the defendant was the holder of the note and deed of trust. At the time of filing the suit, the note was not due. The reconvention was filed, after maturity of the note, alleging ownership thereof in the corporation and in the receiver, asking for recovery on the note with a foreclosure of the deed of trust. In the condition of the record basis for the judgment prayed by plaintiff in error is supplied.

Since handing down the recommendation in this cause, the Supreme Court rendered the decision in General Bonding & Casualty Ins. Co. v. Moseley, 222 S. W. 961, we recalled the record for consideration in the light of that decision. Our further investigation confirms us in the disposition originally suggested. We add this statement, that the Supreme Court may be advised that we have considered the case as it may have been affected by the Moseley Case.

We therefore advise that the judgments of the Court of Civil Appeals and of the district court be reversed, and that judgment be rendered in behalf of plaintiff in error for the amount of the note and foreclosure as prayed by him.

PHILLIPS, C. J. We approve the judgment recommended in this case.