## McALISTER v. ECLIPSE OIL CO.
### No. 2695.

Court of Civil Appeals of Texas. Beaumont. Feb. 14, 1935.

Albert R. Young and Perry & Sidman, all of Houston, for appellant.

W. D. Gordon and E. E. Easterling, both of Beaumont, for appellee.

WALKER, Chief Justice.

By an instrument in writing, dated the 2d day of October, 1931, the owners leased to J. D. McCall for oil development a small tract of 3.7 acres of land in Liberty county. Though this land was situated in proven oil territory, the lease was secured for McCall by G. R. McAlister without cost or obligation by McCall, except the drilling obligations assumed by the terms of the lease. McCall, McAlister, and Y. D. Spell, as incorporators, organized and chartered the Eclipse Oil Company, the charter being dated the 18th of December, 1931; the capital stock of the corporation was $40,000, divided into 400 shares of $100 each, and the charter was issued on affidavit of the incorporators that all the stock had been subscribed and fully paid. The stock was issued to and paid for, as follows: To Spell $1,000, paid by an oil derrick, and stock to that amount was issued to Spell; to McCall and McAlister, each $19,500, which was paid for by an assignment to the corporation of the above-described lease. An affidavit was made and filed to the effect that this lease was worth $39,000. The only payment made by McAlister for his stock was the service rendered by him to McCall in securing the lease, and an undivided $1/128$ royalty interest owned by him individually, and the only payment by McCall was the assignment of the lease. On December 19, 1931, McCall and McAlister each transferred to the corporation $10,000 of his stock; this stock was sold by the corporation and issued to the subscribers to secure money to develop the lease. Two producing wells were brought in on this lease, paid for by the proceeds of the stock sales, and from the profits of these wells dividends were paid to the stockholders to the amount of 25 per cent. of their stock. McCall was continuing president of the corporation; McAlister was its general manager, at a salary of $250 per month, from its organization until he was discharged in November, 1933.

This suit was filed in Jefferson county by Eclipse Oil Company against McAlister to cancel the stock issued to him by the company, on allegations that the lease was fraudulently overvalued, and therefore the stock was issued to him in fraud of the company. Sun Oil Company was also made a party to the suit, and certain other allegations were made against both McAlister and Sun Oil Company which are immaterial to this appeal. McAlister filed his plea of privilege in due form to be sued in Liberty county, which was controverted by Eclipse Oil Company on the ground, among others, that this was a case of fraud committed in Jefferson county, invoking subdivision 7 of article 1995,

R. S. 1925, as amended by Acts 1927, 1st Called Sess., c. 72, § 1 (Vernon's Ann. Civ. St. art. 1995, subd. 7): "Fraud and defalcation. In all cases of fraud, and in all cases of defalcation by public officers, suit may be brought in the county where the fraud was committed or where the defalcation occurred, or any of such suits may be brought where the defendant has his domicile."

The evidence fully sustains the allegations of the plea of privilege on the issue of residence of McAlister.

The evidence offered by appellee in support of its controverting affidavit was as stated above, with the addition that, after the incorporation of the Eclipse Oil Company, the stockholders and directors divided the stock among themselves in the amounts above stated, without any formal authorization of the corporation, acting through its board of directors, and further that McAlister's stock was issued to and received by him in Jefferson county.

The appeal is by McAlister from the judgment of the lower court overruling his plea of privilege.

### Opinion.

Section 6 of article 12 of our state Constitution provides that: "No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

See, also, subdivision 3 of article 1308, R. S. 1925, regulating the issuance of stock and providing that the affidavit furnished the secretary of state shall show "the cash value of any property received, giving its description, location and from whom and the price at which it was received."

The fact that the incorporators made affidavit that the lease was worth $39,000 related only to the prerequisites to incorporation, and in no way regulated the issuance of the stock or fixed the cash value of the lease. McCarthy v. Texas Loan & Guaranty Co. (Tex. Civ. App.) 142 S. W. 96. A subscription to stock in a corporation, in its legal effect, is governed by the provisions of the Constitution, and must be effectuated in consonance with its terms. Mitchell v. Porter (Tex. Com. App.) 223 S. W. 197. Giving effect to the constitutional provisions, the court said in Donoho v. Carwile (Tex. Civ. App.) 214 S. W. 553: "Conveyance of land to corporation for stock of value largely in excess of actual value of land does not constitute payment for such stock."

The authority cited supports the proposition that, as the basis for issuing stock, the property received must be valued at its reasonable cash value. On this proposition see, also, 14 C. J. 288, § 338, subject, "Taking Stock without Full Payment": "The general rule above stated, as well as the constitutional and statutory provisions in many states requiring payment for stock, prevents the promoters of a corporation from procuring the issue of stock in the corporation to themselves either without consideration or for property transferred to the corporation by them at an overvaluation, or for secret profits or alleged services or expenditures by them as promoters which were not in fact rendered or made, or which were overvalued, or an allowance of which was procured without a full and fair disclosure by them of the facts and in fraud of the corporation or bona fide subscribers for stock, or otherwise illegally. The somewhat common custom among promoters of dividing among themselves a certain portion of the shares of stock of the company promoted, upon the principle of 'division and silence,' is fraudulent, and the surrender of such stock for cancellation may be required unless it has passed into the hands of bona fide purchasers for value."

It is also a correct construction of the Constitution and statutes, regulating the issuance of stock, to say that, where the affidavit makes a false statement as to the value of the property transferred to the corporation in lieu of money, and stock is issued on the basis of such false valuation, the Constitution and statutes have both been violated, voiding the issuance of stock at the election of the corporation. Park v. Rich (C. C. A.) 212 S. W. 947; San Antonio Irr. Co. v. Deutschmann, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174. On authority of the cases cited, we conclude that the allegations of the controverting affidavit, that McAlister received stock in excess of the cash value of his interest in the lease, stated a cause of action for fraud within subdivision 7, art. 1995, cited supra.

We agree with appellant's contention that appellee also rested under the burden of introducing evidence reasonably sufficient to raise the issue of fraud pleaded by the controverting affidavit; that is, the issue of overvaluation. Benson v. Travelers' Ins. Co. (Tex. Civ. App.) 40 S.W.(2d) 966. The evidence that McAlister and McCall, by lease dated October 2, 1931, received without cost to them, except the drilling obligations, the lease on the 3.7 acres of land and, on the 17th day of December, 1931, only two and

one-half months later, assigned the lease to the corporation, who assumed all drilling obligations, for $39,000, raised the necessary issue to sustain venue in Jefferson county.

Affirmed.