## McALISTER v. ECLIPSE OIL CO.

### No. 2882.

Court of Civil Appeals of Texas. Beaumont.
Feb. 27, 1936.

Rehearing Denied March 18, 1936.

Second Rehearing Denied April 1, 1936.

Bruce Votaw and M. L. Lefler, both of Beaumont, for appellant.

W. D. Gordon, of Beaumont, for appellee.

COMBS, Justice.

This suit was filed by the appellee, a corporation, hereinafter referred to as the company, against appellant, McAlister, to cancel stock of the company held by McAlister of the par value of $10,000, and to recover $2,500 alleged to have been wrongfully paid by the company to McAlister as dividends on the stock. The company also sued for $2,300 alleged to have been wrongfully drawn by McAlister for expenses while he was acting as manager of the company. However, appellee dismissed that part of its suit at the conclusion of the evidence. The trial was to a jury, and upon conclusion of the evidence the trial court instructed a verdict in favor of the company, canceling McAlister's stock and awarding judgment against him for $2,500, and interest at the rate of 6 per cent. From that judgment McAlister has appealed.

The gist of the company's cause of action, as made by its pleadings, is that McAlister, together with John D. McCall and Y. D. Spell, promoted the formation of the company to drill for oil on a tract of land at Hull, in Liberty county; that McCall obtained a lease on the land which became the sole capital of the company upon its organization, with the exception of a derrick furnished by Spell, and that the $10,000 in stock in question was issued to McAlister unlawfully and without any consideration, and afterwards treasury stock of the company was offered to the public and purchased by various persons, who are now stockholders in the company, and that the issuance of the stock certificate to McAlister and the payment to him of the dividend by virtue of it was a fraud upon the bona fide stockholders of the company. McAlister, on the other hand, contends that he owned a one-half interest in the lease, as well as a ½28th royalty interest in the land covered by it, he being one of the lessors and owning a ⅟16 of the fee; that the stock was rightfully issued to him in consideration of the transfer of the lease to the company.

The material facts which, as we view the record, appear without dispute, may be briefly stated as follows: McCall and McAlister desired to drill for oil on 3.7 acres of land in the edge of the Hull oil field. While the tract had not been proven, there were several producing wells in close proximity to it, and it was believed to be in pro-

ducing territory. The tract was owned by several persons, including McAlister, who owned a 1/16 fee interest in it, as above mentioned. McCall and McAlister decided to obtain a lease on the land and form a corporation to raise money to drill on it. McAlister seems to have taken the lead in obtaining the lease from his co-owners, but obtained it in the name of McCall. The lease, which was dated October 2, 1931, recited a consideration of $10 and other valuable considerations, and in addition to offset provisions and other obligations usually found in such leases it contained an unconditional drilling obligation obligating the lessee, in effect, to begin drilling a well within three months and to prosecute drilling with due diligence, "until the 4,265 ft. stratum of sand is reached or until oil in paying quantities is discovered at a lesser depth or until lessee has spent the sum of $20,000.00 in an effort to reach producing sand." The drilling obligation was, in fact, the only consideration paid for the lease.

After the lease was obtained, McCall and McAlister took in Y. D. Spell as the third incorporator. He agreed to build a derrick on the land and to accept in payment $1,000 of stock in the proposed company. The three then made application to the secretary of state for a charter for the company with a capitalization of $40,000. The stock was subscribed, $1,000 by Spell, and $19,500 each by McCall and McAlister. The application showed the stock "fully paid" by the derrick furnished by Spell at a valuation of $1,000 and of the assignment of the lease held by McCall, which was valued in the affidavit at $39,000. The affidavit recited that the lease was owned jointly by McCall and McAlister. The charter was issued on December 18, 1931, and on the following day McCall assigned all his "right, title and interest" in the lease to the company. The assignment contained the recital: "It being understood that The Eclipse Oil Company, a corporation, by the acceptance of this lease, agrees and obligates itself to carry out all of the terms and conditions stipulated and set forth in said lease aforesaid".

The three incorporators then organized and issued the stock in accordance with the subscriptions. McCall and McAlister then each reassigned $9,500 worth of stock to the company as "treasury stock," and stock certificates were issued to each for the $10,000 worth of stock retained; McCall acting in the capacity of president and

McAlister as secretary-treasurer of the company. The "treasury stock" was then offered for sale to the general public. Some of it was sold for cash and some traded for a drilling rig and other equipment needed, and with the funds and equipment so raised a well was drilled and a producing well brought in. Subsequently the capitalization of the company was increased to $45,000, and the $5,000 additional stock so provided sold. In all, three wells were drilled. McAlister, who was a practical oil man, was in general charge of the development as general manager at a salary of $250 per month. In the latter part of 1932, two dividends, aggregating 25 per cent., were declared and paid to the stockholders, including McAlister, who was paid $2,500 based upon the $10,000 worth of stock standing in his name on the books of the company. It seems that the new stockholders who had come into the company subsequent to the original incorporation gained control of the company and on December 12, 1933, "fired" McAlister as manager, and on January 8, 1934, a stockholders' meeting ordered that McAlister's stock be canceled, and that he return to the company the $2,500 which had been paid to him as dividends. The resolution also authorized suit to be instituted against McAlister for cancellation of the stock, recovery of the dividends, etc., and this suit followed.

By resolution passed at the same time it was recited that McCall had voluntarily returned to the treasury of the company $6,000 worth of his $10,000 in stock, and, further, that McCall had procured the lease and rendered services to the company and was entitled to retain the remaining $4,000 worth of stock which he held, and his title to it was recognized and confirmed.

The company, in its petition, alleged the facts substantially as above, and, further, that "he (McAlister) simply had such stock issued to him and it stands today on the books of said corporation in his name based upon no valid adequate or sufficient consideration of any nature or kind whatsoever." And further, "that the $10,000.00 (stock) allotted to and appropriated by the defendant McAlister at a time when the sole stockholders were himself, said McCall and said Spell, the latter two being at no time chargeable with any acts or conduct in any way prejudicial to the plaintiff, constituted on the part of said McAlister an appropriation of one-fourth (1/4) of the capital stock of said corporation without

the basis or predicate of any adequate consideration whatsoever and was in fact void of legal right and effect, constituting a fraud in the taking of said stock as against said corporation and its legitimate and bona fide stockholders." It is further alleged, in substance, that McAlister had collected in dividends $2,500, and that "in equity and good conscience said money belonged to this corporation as a part of its treasury assets and should be returned as such and judgment rendered against the said defendant therefor."

The defendant, by his answer, pleaded a general demurrer and numerous special exceptions. In addition to a general denial, the defendant pleaded specially to the merits that "this defendant further says that the ten thousand dollars ($10,000.00) worth of stock in the plaintiff corporation which this defendant now owns and has owned since the corporation was organized was issued to the defendant in accordance with a contract previously entered into between said defendant, the said Y. D. Spell, and the said John D. McCall, as organizers of said defendant corporation, for and in consideration of the assignment by this defendant of his interest in the land and the lease, and further consideration of this defendant's efforts and labor in securing from the other interested parties the lease which is the basis of the capital stock of said corporation, and the plaintiff corporation is now estopped to claim otherwise and is estopped to deny defendant's right to all of said ten thousand dollars ($10,000.00) worth of stock."

This case has been before this court before on an appeal by McAlister from an order overruling a plea of privilege. See McAlister v. Eclipse Oil Co. (Tex.Civ. App.) 79 S.W.(2d) 895. Chief Justice Walker, on that appeal, summarized the main features of the case in discussing the matter of venue, and we make reference to that opinion.

The brief excerpt above quoted from the defendant's pleading clearly indicates the theory of his whole defense. Briefly, he contends that he owned a one-half interest in the oil lease in question, plus the small interest in the land, and performed services in getting up the lease, and that, by reason of the agreement between himself, McCall, and Spell, as incorporators, whereby the lease was transferred to the company, a valid contract resulted between him and the company which is binding upon the company and furnished a legal consideration for the stock which was issued to him. That contention is the heart of the case.

We think the proposition is clearly untenable. In the first place, McAlister and McCall were merely promoters. 10 Tex.Jur. p. 609; Thompson, Corp. (2d Ed.) vol. 1, § 81, p. 85. It was not their intention at any time to pay the consideration for the lease; that is to say, perform the drilling obligation, which was its only consideration. Instead, they acquired the lease with the distinct purpose of forming the corporation to take over the drilling obligation and perform the contract. They did not intend to become the only stockholders in the company. They did not intend to pay into its treasury the money for the development, or any part of it. This was intended to be procured by sale of stock to the public, as was afterwards done. The lease was taken in the name of McCall, but, under the facts, he simply held it as trustee for the corporation then in process of formation. Neither McCall nor McAlister, in fact, owned it, and the assignment of the lease to the corporation, thus placing the legal title in it, could not in any sense be considered consideration for the issuance of stock to the promoters. Whatever obligation devolved upon the company to compensate McCall and McAlister, whether in stock or in other form of payment, arose by reason of services performed by them in obtaining the lease and promoting the company, and not by reason of their ownership of the lease.

The status of stockholder has its origin in contract, Austin, Commissioner, v. Strong, 117 Tex. 263, 1 S.W.(2d) 872, 3 S.W.(2d) 425, 79 A.L.R. 1528, and we think the conclusion is inescapable that a purported stockholder acquires no rights, as such, by the issuance to him of shares of stock by virtue of a contract forbidden by law, and, therefore, void. Here it is evident that the $10,000 "paid up stock" was issued to McAlister by reason of the alleged agreement that he should receive it in consideration of his claim to a one-half interest in the lease, which was assigned to the company by McCall. As we have already pointed out, his relation to the lease was that of a promoter of the company, and the stock issued to him was nothing more than promotion stock. It is apparent that the act of the incorporators, in carving out for McCall and McAlister 50 per cent.

of the total capital stock, as promoters,, was in violation of law, and void. Const., art. 12, § 6; Vernon's Ann.Civ.St. art. 1353; Washer v. Smyer, 109 Tex. 398, 211 S.W. 985, 4 A.L.R. 1320; Turner .v. Cattleman's Trust Co. (Tex.Com.App.) 215 S.W. 831.

Since McAlister's alleged contract with the company for the issuance of the stock to him was illegal, and in law no contract at all, the relation of stockholder was not created between him and the company. The stock certificate issued to him as evidence of his stock ownership was void, at least as between him and the company. Washer v. Smyer, supra; Strange v. Houston & T. C. Ry. Co., 53 Tex. 162; Houston & T. C. Ry. Co. v. Van Alstyne, 56 Tex. 439.

It is our conclusion, also, that the payment to McAlister of $2,500 in dividends was illegal. It was paid to him by virtue of the fact that he appeared upon the books of the company as a stockholder and owner of $10,000 worth of stock. Since he was not, in law, the owner of the stock, he was not legally entitled to collect the dividends paid to him by virtue of it.

The Constitution and laws of this state prohibiting the issuance of stock, except upon adequate consideration, are designed to protect the public and the bona fide purchasers of stock in corporations against such stock manipulation as is · disclosed in this case. Such ambidextrous juggling of stock as is here revealed constitutes, ·in law, a fraud upon the stockholders of the company, for which the courts will afford appropriate relief at the suit of the company. Pruitt v. Westbrook (Tex.Civ.App.) 11 S.W.(2d) 562; Turner v. Cattleman's Trust Co. (Tex.Com.App.) 215 S.W. 831; San Antonio Irr. Co. v. Deutschmann, 102 Tex. 201, 105 S.W. 486, 114 S.W. 1174; Park v. Rich (Tex.Com. App.) 212 S.W. 947.

The trial court properly instructed the verdict for the appellee for cancellation of the stock certificate and for judgment for the dividends wrongfully paid to appellant. The judgment is 'affirmed.

This holding is intended to be without prejudice to the appellant's right to establish, by an appropriate action, such claim as he may have against the company. It appears that he may have contributed services and expenses in getting up the lease and promoting the company which in-

ured, directly and proximately, to its benefit, and, also, that an interest owned by him in the land became the property of the company. Such rights or claims, if any, as he has against the company rest in quantum meruit. See Weatherford, M. W. & N. W. Ry. Co. v. Granger, 86 Tex. 350, 24 S.W. 795, 40 Am.St.Rep. 837; Thompson, Corporations (2d Ed.) vol. 1, § 93, p. 101; 10 Tex.Jur., subject, Corporations, § 19, p. 609, and cases cited. And since he has tried his case upon what we think is an erroneous theory, he should be given an opportunity to establish his rights, if any he has.