**SMITH v. IDEAL LAUNDRY CO. et al.***
(No. 7590.)

(Court of Civil Appeals of Texas. San Antonio. June 9, 1926. Rehearing Denied July 1, 1926.)

**1. Appeal and error ⊕⇒907(2).**

In absence of statement of facts, trial judge's fact findings will govern appellate court as to evidence.

**2. Corporations ⊕⇒99(3), 469 — Bonds need not be sold at par, nor face value received, but stock must be issued at full face value, though only fictitious increase is void (Const. art. 12, § 6).**

Const. art. 12, § 6, does not require that corporation bonds be sold at par, or face value received, but requires that stock be issued at full face value, though declaring only fictitious increase of stock or indebtedness void.

**3. Corporations ⊕⇒189(13)—Fact findings held to show that corporation exchanged stock and bonds for adequate consideration without intending or using any device to violate law.**

In suit to enjoin corporation from selling property and to cancel bonds and liens securing them, court's fact findings *held* to show that corporation, with stockholders' approval, exchanged stock and bonds for present consideration, not disproportionate to amounts thereof, with view to legitimate corporate purposes, without intending or using any device to violate law.

**4. Corporations ⊕⇒469—Inquiry whether corporation received full value for bonds, or paid too much for property received in exchange, held not justified (Const. art. 12, § 6).**

Const. art. 12, § 6, does not justify inquiry whether corporation received full value for bonds exchanged for other property, or paid too much for latter; question being whether amount received reasonably approximated amount of bonds.

**5. Corporations ⊕⇒387(3) — Stockholder participating in bond issue, and remaining silent for over four years, held estopped by laches, and barred by statute from attacking validity of bonds.**

Stockholder, fully acquainted with circumstances of bond issue, in which he participated, and remaining silent for over four years, *held* estopped by laches, and barred by statute from attacking validity of bonds.

**6. Corporations ⊕⇒99(1), 469—Stock and bond issue held merely voidable, if property received in exchange was overvalued or stock and bonds undervalued.**

Issuance of corporation stock and bonds in good faith, without intent or desire to violate law, *held* merely voidable, if they were undervalued, or property received in exchange was overvalued.

**7. Corporations ⊕⇒99(1), 469 — Issuance of stock or bonds for other than money, property, or labor is not void (Const. art. 12, § 6).**

Const. art. 12, § 6, does not make issuance of stock or bonds for something other than money, labor, or property, in violation thereof void, as it does a fictitious increase of stock or indebtedness.

Error from District Court, Bexar County; S. G. Tayloe, Judge.

Action by Charles E. Smith against the Ideal Laundry Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

D. W. De Neene and John H. Bickett, Jr., both of San Antonio, for plaintiff in error.

Kampman & Burney, G. Grant White, and Guinn & McNeill, all of San Antonio, for defendants in error.

FLY, C. J. This is an action by plaintiff in error against Ideal Laundry Company, Ike S. Kampmann, M. A. Tyler, Kenneth Wimer, and E. A. Kelley; the individuals being joined as officers and stockholders in the corporation. The object of the suit was to enjoin the company from selling its properties and prevent a sacrifice thereof, and to cancel the bonds and liens securing them. The cause was heard by the court without a jury, and the temporary injunction was dissolved and judgment rendered that plaintiff in error take nothing by his suit. Others had come into the suit after it was instituted, and the writ of error bond is made payable to the Ideal Laundry Company, I. S. Kampmann, Graham Dowdell, Kenneth Wimer, Wimer-Richardson Company, E. A. Kelley, W. L. Clarke, and W. W. Collier.

[1] No statement of facts has been filed, and the findings of fact of the trial judge will govern this court as to the evidence. The laundry company was chartered on July 20, 1920. There were nine subscribers giving sums amounting in the aggregate to $100,000, all of which were paid. Stock and bonds were issued, certain personal and real property was purchased by the corporation, and several laundries were purchased by it. The stock was distributed to fourteen persons, plaintiff in error obtaining 30 shares; and bonds were delivered in the sum of $86,000 to the different subscribers, Kampmann receiving $31,250 and Kelley $37,500. Kampmann was given the bonds, by agreement of the stockholders, plaintiff in error among the number, to reimburse him for a debt owing him by the Ideal Penny Laundry Company, which had been absorbed by defendant in error laundry company. Plaintiff in error knew of the absorption of the three laundries by the Ideal Laundry Company, and raised no objection to the sale of the stock and bonds to pay for their properties. The court further found—

"that at a meeting of the Ideal Laundry Company, held on the 27th day of March, A. D. 1925, the stockholders voted to sell all of the machinery and equipment of said corporation

to the holders of the outstanding bonds, in consideration of the cancellation of said bonds and the acceptance of said property, subject to the debts of said corporation then outstanding, amounting to about $25,000. That the stockholders of the Ideal Laundry Company who do not hold bonds will not be among the transferees of the property. The net result will be that the bondholders of the Ideal Laundry Company will own all of the assets of said company, and the Ideal Laundry Company will be dissolved. I find that the value of all the assets of said company, at the time of the trial, does not exceed the sum of $75,000."

This suit was filed on February 12, 1925. The stock and bonds were issued more than four years prior to the time this suit was instituted.

The stocks and bonds of the Ideal Laundry Company were distributed among the stockholders of record of the three corporations, which were merged, which they accepted for their interest in the three corporations. The physical assets conveyed to the Ideal Laundry Company by the absorbed corporations were of the actual value of $115,000, and the value of the real estate, over and above its incumbrances, was $6,000; the aggregate value being $121,000. The merger of the corporations was obtained and acted upon in the utmost good faith, and the bonds in the sum of $86,000 and the stock in the sum of $100,000 were not fictitious, but issued with no intention to violate law or Constitution, but in honesty and good faith, and with the full knowledge and consent of plaintiff in error. He was the owner of stock in the Ideal Penny Laundry Company, and accepted stock in lieu thereof in the Ideal Laundry Company.

[2] It is provided in article 12, § 6, state Constitution:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

This constitutional provision does not require that bonds shall be sold at par, or that the corporation shall receive face value for the same, but it is required that the stock should be issued at the full face value. However, the Constitution only renders void "all fictitious increase of stock or indebtedness." Northside Ry. Co. v. Worthington, 88 Tex. 573, 30 S. W. 1055, 53 Am. St. Rep. 778. In the case cited the following language used by the Supreme Court of the United States in Railway Co. v. Dow, 120 U. S. 287, 7 S. Ct. 482, 30 L. Ed. 595, is cited and not condemned:

"It is not clear, from the words used, that the framers of that instrument intended to restrict private corporations—at least when acting with the approval of their stockholders, in the exchange of their stock or bonds for money, property, or labor, upon such terms as they deem proper; provided always that the trans-

action be a real one, based upon a present consideration, and having reference to legitimate corporate purposes, and is not a mere device to evade the law and accomplish that which is forbidden."

[3] The findings of fact show that the corporation, with the approval of its stockholders, exchanged their stock and bonds for money and property; that the dealings were real and not simulated, founded upon a present consideration, and with a view to legitimate corporate purposes; and that there was no intention to violate the law, nor was any device used to evade or defeat the law.

[4] The provision of the Constitution under consideration would not justify an inquiry as to whether a corporation received full value for its bonds, nor to inquire into whether too much was paid for property; the only matter for inquiry being as to whether the amount received in money or in property bears a reasonable approximation to the amount of the bonds. As said in Western Supply Co. v. U. S. & Mex. Trust Co., 41 Tex. Civ. App. 478, 92 S. W. 986, a writ of error being denied by the Supreme Court:

"The Constitution provides that 'no corporation shall issue stock or bonds, except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void.' * * * This provision of the Constitution does not require that the corporation shall receive a dollar in money for each dollar of indebtedness, but that the amount received shall bear some reasonable approximation to the amount of indebtedness."

The testimony shows that the amounts of the bonds and the stock were not disproportionate to the money received and the property purchased.

[5, 6] A large portion of the brief of plaintiff in error is devoted to sustaining the propositions that a party will not be estopped by his conduct in connection with a void undertaking, nor can he be concluded from attacking an act on account of limitation which was null and void from the beginning. It may be admitted that the propositions are sound, but neither the law nor the facts show a void undertaking. It follows that the argument and authorities on the subject of a void issuance of stock and bonds, while abstractly sound, have no applicability to the facts in this case as found by the trial judge. It follows that the plaintiff in error is estopped by his conduct to attack the validity of the stock and bonds. Mitchell v. Porter (Tex. Com. App.) 223 S. W. 197; Stuart v. Mitchell (Tex. Civ. App.) 241 S. W. 713. By his laches he lost the right to any relief he may have been entitled to. The action was barred by the statute of limitations of four years. Applying the most rigorous rules of construction, the issuance of the stock and bonds was merely voidable. They were issued in good faith, with no intention or desire to violate

the law, and we do not think the acts of which complaint is made rendered the stock and bonds null and void. Cement Co. v. Latta (Tex. Civ. App.) 193 S. W. 1115. If the property bought was overvalued, or the stock and bonds were undervalued, there is nothing to indicate any fraudulent design upon the part of any one. As said in the case last cited:

"A corporation may lawfully issue its stock in payment for property conveyed to it. Of necessity, the representatives of the corporation must be vested with the authority to value the property which it is proposed to acquire. When they do so fairly and honestly and issue stock in payment therefor, the par value of which is equal to the valuation placed by them upon such property, such transaction cannot be set aside, simply because the property in fact was overvalued."

[7] In passing upon the constitutional provision, hereinbefore referred to and copied, the Supreme Court held in Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320:

"There is no declaration in the constitutional provision that a transaction in which something other than money, property, or labor is received in payment for the corporation's stock shall be utterly void. It prohibits such a transaction and, therefore, makes it unlawful, but that is the extent to which it goes. If a security be accepted in payment for the stock, such, for instance, as a subscriber's note, which is not property for such a purpose, the Constitution does not say either that it, or the stock issued for it, shall be void. The acceptance of the note in payment for the stock and the issuance of the stock are only interdicted. The word 'void' is used but once in the constitutional provision, and that, it is to be noted, is not in the clause which prohibits the issuance of stock for other than money, property or labor. It is in the distinct clause which says that all fictitious increase of stock or indebtedness shall be void. While the term is found in that clause of the section, the framers of the Constitution avoided its use in the other. It must be assumed that they did so deliberately. There is an essential difference between prohibiting a certain form of transaction—making it unlawful, and declaring that it, with all securities issuing out of it shall be utterly void."

We think the opinion puts the proper construction upon the constitutional clause, and answers every contention of plaintiff in error under the facts found by the trial judge. The distinction made by the founders of the Constitution between the unlawful issuance of stock or bonds for an inadequate or no consideration, and the fictitious increase of stock or indebtedness, is just and right, for the first may involve a lack of business acumen, but the second involves fraud and moral turpitude. The former may involve such negligence and lack of business sense as to render the act voidable; the latter is criminal, and renders the transaction void. The testimony fails to bring the transactions complained of in this case into the latter class. Thompson v. First State Bank, 109 Tex. 419, 211 S. W. 977; General Bonding Co. v. Moseley, 110 Tex. 529, 222 S. W. 961; Commonwealth Bonding Co. v. Hollifield (Tex. Com. App.) 220 S. W. 322.

Plaintiff in error had as the main purpose in bringing this suit the cancellation and destruction of the bonds issued by the corporation, and yet he was fully acquainted with all the facts and circumstances surrounding the issuance of the bonds at the time of their issuance and participated in the issuance of the same. He remained silent for over four years, and now seeks to restrain the sale of the properties of the corporation on the ground that the "fictitious and void bond issue" will "depreciate and discount the value of the property and assets of said corporation." He is estopped to set up any such contention, and barred by limitation.

The judgment is affirmed.