## DYSART v. FLEMISTER et al.

### No. 12876.

Court of Civil Appeals of Texas. Dallas.
April 20, 1940.

Rehearing Denied May 18, 1940.

Fred J. Dudley and Webster Atwell, both of Dallas, for appellant.

Touchstone, Wight, Gormley & Touchstone and Bromberg, Leftwich, Carrington & Gowan, all of Dallas, for appellees.

LOONEY, Justice.

L. T. Dysart, Trustee of the bankrupt estate of the Dallas Food Stores, an incorporation, brought this suit, in his official capacity, against J. A. Flemister, W. D.

Jones and James N. Tardy, the sole stockholders and directors of the bankrupt company, seeking to recover from each an alleged unpaid balance due the corporation on his stock subscription.

Plaintiff alleged that, the capital stock of the company was $60,000, represented by 600 shares of the value of $100 each; that the same was subscribed by the defendants, as follows: Flemister 480 shares, Jones 60 shares, and Tardy 60 shares, to whom certificates of stock were issued; contending, however, that the defendants had not fully paid the corporation for the stock, and, as a basis for such contention, alleged in substance that, before being chartered, $60,000 in cash was deposited to the crédit of the corporation in the Republic National Bank & Trust Company of Dallas, being the full amount of its capital stock; and that, at the time the charter was presented to the Secretary of State for approval and filing, there was also presented a certificate of deposit for $60,000, showing that, that amount was in the Bank to the credit of the corporation, and upon such showing, the Secretary of State filed the charter, and thus the corporation came into existence; that the money was subsequently used by the corporation in the purchase, from Flemister, one of the stockholders and a director, of certain assets (a stock of merchandise and fixtures), paying therefor a sum in excess of the true value of the property, praying for judgment against each stockholder for an amount representing the difference between the true value of the assets purchased and the par value of the stock, which plaintiff alleged to be 60 per cent. of the face value of the stock; in other words, that only 40 per cent. of the par value of the stock was paid. Plaintiff did not allege that the assets purchased were fraudulently over-valued, or that, the value agreed upon was not arrived at in good faith; neither was it alleged that, any stockholder or creditor suffered injury by reason of the transaction; in fact, at that time, there were no creditors.

The court sustained a general demurrer to plaintiff's petition and, declining to amend, his suit was dismissed, from which he appealed.

■ The trustee in bankruptcy stood in the shoes of the bankrupt corporation, succeeded simply to its rights and causes of action existing at the time of the adjudication; therefore, if, under plaintiff's allegations, the corporation could not have maintained the present action against the defendant-stockholders, neither can the trustee in bankruptcy maintain the action (see Note 1, 11 U.S.C.A. § 110). Plaintiff's allegations show that the full amount of the authorized capital stock of the Dallas Food Stores, Inc., was subscribed by the three defendants, and was paid in cash at the time the charter was filed. That amount, $60,000, was to its credit in the Republic National Bank & Trust Company of Dallas. Obviously, this money belonged to the corporation, was subject to its disposition, in fact, was subsequently expended in the purchase of a stock of merchandise and fixtures.

■ It appearing that, the corporation was chartered in the manner prescribed by the statute, the subscribing stockholders having fully paid the amounts, respectively, of their subscriptions, placed the same in the bank to the credit of the corporation, in our opinion fully satisfied the law; hence, under these circumstances, we do not think the corporation could have maintained an action against these defendants for any amount due on the stock, neither do we think the trustee in bankruptcy can maintain the action. For the reason just stated, we are of opinion that the judgment of the court below was correct and should be affirmed and, but for the earnest contention of counsel for plaintiff, which will be discussed later, this opinion would end at this point.

Plaintiff alleged that the amount to the credit of the corporation in the bank was expended in the purchase of a stock of merchandise from Mr. Flemister, one of the stockholders and directors, paying therefor a price in excess of its true value. Based upon this fact, plaintiff seeks to liken the case to one where stockholders pay for their stock in property allegedly taken by the corporation in excess of its true value, contending that the stockholders are liable to the corporation for the difference; in other words, that the true value rule is applicable, without reference to the good faith involved in the transaction.

■ For the reason heretofore stated, we do not think this question is in the case, but even if so, we are of opinion that the proposition contended for by plaintiff is incorrect. Plaintiff relies upon Cole v. Adams, 19 Tex.Civ.App. 507, 49 S.W. 1052, 1054. The authority cited apparently supports plaintiff's contention, but, prior to that decision, the questions of law arising

in the case were certified to the Supreme Court, and were answered. See 92 Tex. 171, 46 S.W. 790, 792. That suit was by the receiver of a corporation against stockholders to recover balance due upon stock, the contention being, similar to the contention made here—that 50 per cent. of the par value of the stock was paid for in property of an uncertain and speculative value, hence, the stockholders were liable to the corporation. The certificate embraced all the material facts upon which liability could have been predicated, stating, among other things, that the property received by the corporation, in payment for stock, was taken in good faith and with no intent to deceive or defraud anyone, and concluded by propounding, among others, this question: "Are the stockholders * * * liable for * * * 50 per cent. of the par value of the stock issued to them on the 22d of May, 1890?" The Supreme Court answered the question in the negative, thereby acquitting the defendants of liability, and, we think necessarily, held that, absent fraud in the transaction, a stockholder is not liable for an unpaid balance due on stock, because, later, it is ascertained that property accepted in payment was taken at more than its true value. However that may be, since the decision by the Court of Civil Appeals in Cole v. Adams, supra, the question has been definitely settled contrary to the contention of plaintiff. A typical case is Smith v. Ideal Laundry Co., Tex.Civ.App., 286 S.W. 285, 287. In disposing of that case, the San Antonio Court of Civil Appeals said: "A corporation may lawfully issue its stock in payment for property conveyed to it. Of necessity, the representatives of the corporation must be vested with the authority to value the property which it is proposed to acquire. When they do so fairly and honestly and issue stock in payment therefor, the par value of which is equal to the valuation placed by them upon such property, such transaction cannot be set aside, simply because the property in fact was overvalued." And in Peden Iron, etc., Co. v. Jenkins, 203 S.W. 180, 187, the Beaumont Court of Civil Appeals, quoting from the Supreme Court of the United States, Coit v. North Carolina Gold Amalgamating Co., 119 U.S. 343, 7 S.Ct. 231, 30 L.Ed. 420, said: "'When the charter authorizes capital stock to be paid in property, and the shareholders honestly and in good faith put in property instead of money in payment of their subscriptions, third par-

ties have no ground for complaint. The case is very different from that in which subscription to stock is payable in cash, and where only a part of the installment has been paid. In that case there is still a debt due to the corporation, which, if it becomes insolvent, may be sequestered in equity by the creditors, as a trust fund liable to the payment of their debts. But where full-paid stock is issued for property received, there must be actual fraud in the transaction to enable the creditors of the corporation to call the stockholders to account.'" To the same effect, see Southwestern Portland, etc., Co. v. Latta & Happer, 193 S.W. 1115, by the El Paso Court of Appeals, and Park v. Rich, 212 S.W. 947, by the Commission of Appeals. ·

In the argument, plaintiff also contends that, as against a general demurrer, indulging every reasonable intendment arising from the allegations, the petition presented the issue of fraud.

As before stated, plaintiff did not allege that, the transactions, resulting in the chartering of the Dallas Food Stores and in the purchase of the stock of merchandise, were either fraudulent or fictitious—the gravamen of the charge being that, the $60,000 constituting the full amount of the paid-in capital stock of the company, was expended in the purchase of a stock of merchandise, allegedly at a price in excess of its true value. Based upon these allegations, the pleader drew the following conclusion, to-wit: "Plaintiff would further show to the court that because of the facts hereinbefore alleged, that the defendants resorted to a plan and a scheme to enrich themselves at the expense of the Dallas Food Stores, Inc., and that by virtue thereof they are liable to this plaintiff as trustee for 60% of their subscription of the capital stock of the Dallas Food Stores, Inc., in proportion as the same shall bear to the sum of $42,800.00."

We do not think it follows, as a matter of law, that "because of the facts hereinbefore alleged", fraud is to be implied; as fraud is never implied unless the facts from which the implication is drawn admit of such implication. Obviously, the excerpt quoted from plaintiff's petition is but the conclusion of the pleader, based upon the facts theretofore alleged, which, in our opinion, do not admit of such an implication. As said by the Supreme Court, in Baines v. Mensing, 75 Tex. 200, 12 S.W. 984, 985: "Merely to characterize an act as fraudulent does not make it a good allega-

tion of fraud. * * * No amount of mere denunciation of it as a fraud could make it so. The facts constituting the fraud must be alleged."

However, we do not think the trustee in bankruptcy can complain of the action of the defendants in regard to the transactions involved, for the reason that no cause of action arose in favor of the corporation. It appears that, the three defendant-stockholders were the only persons who took part in the organization of the corporation; they subscribed for all its capital stock and, as between themselves, paid according to their subscriptions and invested the money for the stock of merchandise, in the way and manner agreed.

The recent case of McAlister v. Eclipse Oil Co., 128 Tex. 449, 98 S.W.2d 171, 176, was a suit by the corporation to cancel certain stock issued for an oil and gas lease, alleged to have been over-valued. As in the case at bar, only three persons took any part in the organization of the corporation involving the issuance of its capital stock, no creditors being in existence at the time. Among other things, the court said: "It follows that under the record we have detailed, when this concern was chartered and the properties above described conveyed to it, it became the corporate owner thereof, but the real or beneficial owners of such property were the three stockholders in the proportion in which they held the stock of the corporation. There were no creditors. Under such a record, as between the stockholders themselves, certainly no one or more of them could have questioned the beneficial interest of any one of the others in the properties of the corporation. All this being true, we are unable to see how the corporation's rights could then rise higher than the rights of all of its beneficial owners, and in this regard there is nothing in this record that would change the status at this time from that which existed at the time it was originally organized and its capital stock originally issued. * * * Under such a record we think that, as between each other, neither the corporation itself nor any of its stockholders has any right to say that the issuance of the stock to McAlister was a void transaction in its incipiency. Smith v. Ideal Laundry Co. (Tex.Civ.App.) 286 S.W. 285, and authorities there cited; Nenney v. Waddill, 6 Tex. Civ.App. 244, 25 S.W. 308, and authorities there cited."

We hold that, defendants having paid in cash for all stock issued, were not liable to the corporation, therefore, are not liable to its trustee in bankruptcy. If, however, we should be in error in the conclusion just announced, we hold that, no fraud appearing in the transactions, the price for the stock of merchandise agreed upon between Flemister and the corporation, acting through at least a majority of its directors, was a valid and unassailable transaction; and furthermore, that the three defendant-stockholders being the beneficial owners of all the assets of the corporation and the only ones involved in the transactions of which complaint is made, neither the corporation nor its trustee in bankruptcy can complain. We conclude that the judgment of the trial court, sustaining the general demurrer and dismissing the cause, was correct, hence is affirmed.

Affirmed.